(44 Misc. Rep. 582.)

PRICE v. PARKER et al.

(Supreme Court, Special Term, New York County. August, 1904.)

1. ACTIONS—CONTRACT AND TORT.
   Where the gravamen of a complaint is on contract, the fact that there are allegations therein charging tortious conduct on the part of defendants is not enough to make the action one sounding in tort.

2. ELECTION OF REMEDIES.
   Where the facts authorize an action in assumpsit, though they will support an action in tort, plaintiff may waive the latter cause and proceed in assumpsit.

3. SAME.
   After plaintiff has elected to proceed on contract, he is precluded from thereafter proceeding in tort.

4. SAME.
   Where, on motion for a change of venue, plaintiff, in an affidavit in opposition, stated that the action was in tort, and such statement had no effect on the decision of the court, which was adverse to plaintiff, it was not a binding election to proceed in tort.

5. SAME.
   Where plaintiff, on the faith of a formal declaration that his action is on contract, and not in tort, obtains a reference, it is an election binding on him in all future proceedings in the action.

6. REFERENCE—LONG ACCOUNT.
   Where plaintiff, a customer, sues a firm of cotton brokers, and asks for a reference on the ground that the trial will require the examination of a long account, the fact that plaintiff's cause of action is disputed, or

that issues are raised outside the account, or that the examination is required only because of the defense interposed, is insufficient to defeat the right to a reference.

7. SAME—COUNTERCLAIM.

Where, in an action on an account, a reference is asked, it will be denied where a counterclaim is interposed which sets up a distinct cause of action.

Action by Theodore Price against James H. Parker and others. Motion for reference of the issues. Granted.

Hornblower, Byrne, Miller & Potter (William B. Hornblower, of counsel), for the motion.

John R. Abney (William D. Guthrie, John R. Abney, and Paul E. De Fere, of counsel), opposed.

GIEGERICH, J. The plaintiff moves for an order of reference upon the ground that the trial of the action will require the examination of a long account, and will not require the decision of difficult questions of law. The defendants resist the motion on various grounds, which will be discussed successively.

The first is that the plaintiff, having elected to proceed in tort, cannot now make another election to proceed upon contract for the purpose of obtaining a reference. This objection is urged upon two grounds. The first is that the complaint itself is founded in tort, but I think an examination of that pleading shows that the defendants are mistaken. While it is true that incidentally certain allegations are made in the complaint as to conversion by the defendants and as to fraudulent conduct, the gravamen of the complaint and the substance of the cause of action are for breach of the contract of employment of the defendants by the plaintiff as commission merchants and brokers for him, and the allegations as to conversion, etc., are merely incidental. Where the gravamen of the complaint is on contract, the fact that there are allegations therein charging tortious conduct on the part of the defendants is not enough to make the action one sounding in tort. In People v. Wood, 121 N. Y. 522, 24 N. E. 952, it is said (page 529, 121 N. Y., page 953, 24 N. E.):

"Even if, upon the facts alleged, a cause of action in tort might be spelled out from the language of the complaint, it is established by ample authority that it is still optional with the injured party to waive the tort and rely upon assumpsit, if he chooses to do so, where the facts authorize such an action. Goodwin v. Griffis, 88 N. Y. 629; Rothschild v. Mack, 115 N. Y. 1, 21 N. E. 726. The right of the plaintiffs to waive their cause of action in tort, and found their right to recover upon contract, whether express or implied, is unquestionable, and there is no power either with the defendant or in the court to compel them to proceed upon the tort."

In this case the General Term reversed the order of reference, and the Court of Appeals reversed the General Term, saying, among other things, at page 529, 121 N. Y., page 953, 24 N. E.:

"The motion to refer constitutes, we think, such an election, and precludes the people from afterwards proceeding as in an action for tort."

In Conaughty v. Nichols, 42 N. Y. 83, it was held that a complaint containing a statement of facts constituting a cause of action on contract

¶ 7. See Reference, vol. 42, Cent. Dig. § 27.

might be sustained by proof of such facts upon the trial, although the complaint was in form for a conversion; and the court refused to set aside a judgment founded upon the contract proved, saying that the complaint contained "an ample statement of facts constituting a cause of action on contract, and such allegations were clearly supported by the evidence," and held (page 87, 42 N. Y.) that the plaintiff should not be deprived of his judgment "because the complaint contained an allegation which was unnecessary to such cause of action, and which might well have been disregarded." See, also, Neftel v. Lightstone, 77 N. Y. 96; Byxbie v. Wood, 24 N. Y. 607. In this case the plaintiff expressly waives any claim that the cause of action set up in the complaint is of a tort nature, and in his affidavit says, "I claim damages in this action only for the breach of the contract therein alleged between the defendants and myself."

The second reason assigned why it should be held that an election has been made is that the plaintiff has heretofore claimed that the action was founded in tort, in an affidavit resisting a former motion made by the defendants to change the venue from Kings county to New York county. There was no occasion at that time for taking any affirmative or decisive action one way or the other, as the motion was merely one to change the place of trial, and on this question the statement that the action was for conversion was merely incidental, and apparently had no effect upon the decision. If the plaintiff had won, there might perhaps be some ground for urging that he had made a binding election. He lost, however, and the defendants' claim, that the action be tried in this county was sustained. If, on the other hand, he succeeds in this motion, and obtains a reference on a formal declaration that his action is on contract only, and not in tort, he will, as shown above, be held to his election in all future proceedings in the action. He has come to the parting of the ways, and has taken affirmative and decisive action that is irrevocable.

So far as the contentions made on the motion to change the place of trial are concerned, it is to be observed that there is more or less shifting of positions on the part of the defendants as well as the plaintiff, but I do not think the decision of so important a motion in the action as this should be greatly influenced by the claims and contentions on either side upon that motion.

Coming now to the argument advanced on behalf of the defendants that the trial of this action cannot, in any event, involve the examination of a long account, I am satisfied of the contrary. The complaint alleges the purchase on the defendants' part as brokers for the account of the plaintiff of contracts for the purchase of 638,900 bales of cotton for delivery to them for the plaintiff's account in the month of January, 1903, and that each of such contracts was for the purchase of 100 bales. It is further alleged that the plaintiff was to deposit a margin of $1 per bale against such transactions, and to renew the same when absorbed to the extent of 50 per cent.; there being a further provision that, where contracts to sell were made against contracts to purchase, then, in the event of fluctuations, the losses on the one class of transactions should be offset by the gains on the other class, and that only the difference should be considered in determining the amount of the margin required;

there being a distinction, also, between such offsetting transactions where both classes of transactions were in the New York market, and where some were in this market and some in other markets, as Liverpool or New Orleans. The complaint also alleges that the defendants had in their hands at all times the full amount of margin required on all purchases and sales made by the defendants under their employment, which allegation the answer denies. The complaint also avers that the defendants, without authority, disposed of contracts of purchase for the delivery to the defendants during the month of January, 1903, to the amount of 427,700 bales, as specified in a schedule annexed to the complaint. The answer, in addition to various denials, sets up as an affirmative defense a defect of parties plaintiff, in that other individuals or firms were associated with the plaintiff, and are interested in the alleged cause of action, and, for a second separate defense, alleges that the purchase of contracts for the future delivery of cotton in January, 1903, as alleged in the complaint, was only a part of the transactions, of which the other part consisted of the sale for plaintiff's account of a large number of contracts for future delivery of cotton during other months. In this defense it is further alleged that on November 8, 1902, the plaintiff notified the defendants that he was at the end of his resources, and could furnish no more margins, and that he had large outstanding obligations with other brokers through whom he had purchased and sold large quantities of cotton for future delivery, and that they were about to call upon him for additional margins, to which calls he would be unable to respond, and that it was agreed between the plaintiff and the defendants that the latter should "take over all such accounts with other brokers, and that the accounts so taken over, together with the contracts already in the hands of the defendants, consisting of 'straight,' 'straddle,' and 'spot' cotton transactions, be liquidated and handled by, and in the sole discretion of, the defendant James H. Parker, who should have exclusive management and direction and absolute control of said contracts, and full power to carry on the liquidation thereof, and of the collateral held by defendants, in such manner and at such times as he saw fit, without consultation with or notice to the plaintiff, and without any interference on his part, and including the power to make repurchases and resales of contracts for cotton as to said Parker might seem advisable," and that the defendant Parker, in pursuance of such agreement, proceeded to liquidate the accounts, and that about December 11, 1902, there remained in the hands of the defendants contracts for the purchase of 42,300 bales of cotton for January, 1903, delivery, contracts for the purchase of 5,500 bales of cotton for March, 1903, delivery, and contracts for the sale of 48,100 bales of cotton for May, 1903, delivery, together with some shares of stock and cash in the amount of upwards of $90,000; and, further, that the plaintiff was notified of said transactions, and approved and ratified the same, and accepted from the defendants the said remaining contracts for the purchase and sale of the said securities and money, except a small balance, which the defendants duly tendered prior to the commencement of the action. In the plaintiff's affidavit, on which this motion is made, he states, among other things, that the contracts of purchase for the future delivery of January, 1903, cotton mentioned in the

complaint were only a part of the transactions between him and the defendants, and that the other parts consisted, or should have consisted, of contracts of sale for future delivery during months other than January, which contracts he had ordered them to make, and which they reported to him that they had made, and were carrying for his account. In this affidavit the plaintiff further states that he disputes and repudiates each and every one of the credit items in the account mentioned in the complaint representing 4,277 contracts of purchase, and the same number of contracts of sale, and also that he not only denies the defendants' authority to make for him the said sales of cotton for delivery in January, but also disputes that they actually made any of such alleged contracts which the credit items purport to represent, or that the defendants actually made application of any of the said contracts of sale to any of the said contracts of purchase, and that such contracts of sale, if made at all, were not applied to the plaintiff's contracts of purchase, and that he will on the trial require the defendants to disclose every detail of how they used his contracts, which would involve the examination of accounts between the defendants and other members of the New York Cotton Exchange, in which they set off and settled their mutual contracts between themselves by means of what are known on that exchange as "ring settlements," "direct settlements," and "clearing house settlements," which are extremely intricate and complicated matters of account. It appears, furthermore, that under the allegation in the complaint that the margins were kept good as required, which allegation is denied in the answer, it will be necessary to go into the various accounts set forth in the exhibits annexed to the complaint.

Upon such pleadings and such allegations in the moving affidavit, it seems obvious that long accounts will have to be gone into at the trial. The cases relied upon to support the proposition that, when the plaintiff's cause of action is disputed, a reference will not be ordered, are broadly distinguishable from this. That distinction was pointed out recently by the Appellate Division of this department in the case of Boisnot v. Wilson (July 15, 1904) 88 N. Y. Supp. 867, where the Special Term had refused a reference on the ground that, as the contract relied upon was disputed, an accounting would be necessary only in the event of the plaintiff succeeding in the main issue. In reversing the order, the Appellate Division said:

"This action is one at law. It must be tried by a jury, and upon the trial the plaintiff will not only have to prove his contract, but will have to prove the amount due him under it. Then, if the defense of the statute of limitations is successful as to a portion of the plaintiff's claim, the question of the amount due the plaintiff would depend upon the profits during the years not barred by the statute of limitations. Thus, from the very nature of the contract alleged, the amount due to the plaintiff is to be determined upon an ascertainment of the profits of the store of which the plaintiff was the manager, and it is entirely clear that this question cannot be intelligently tried by a jury. The rule announced by the court below would be correct if the action was for an accounting, where the right to an accounting should be determined by the court upon the trial, and in the event that an accounting was necessary the account could be directed by an interlocutory judgment; but as this action is one at law, and must be tried by a jury, it is not practicable to first determine the question as to the contract, and then direct an interlocutory judgment for an accounting."

As will be seen from the foregoing quotation, the mere fact that issues outside the account are raised is not alone enough to defeat the right to a reference. The same rule was applied by the General Term of this department in Hall v. United States Reflector Co., 14 Wkly. Dig. 48, affirmed 95 N. Y. 648, 96 N. Y. 629, and referred to with approval in Steck v. Colorado Fuel & Iron Co., 142 N. Y. 236, 249, 37 N. E. 1, 25 L. R. A. 67, where it was held that, when the investigation of a long account is required, an order of reference may be granted, although the question as to whether or not a copartnership existed, depending upon the construction of an agreement, and a question of fraud, are involved in the case. An observation made in that case seems equally applicable in this, viz., "The defense set up and the issues resulting from them and the reply [in this case, affidavit] would seem to be such as to require the more deliberate investigation which is secured by a reference than could be had upon a trial at circuit;" and such weight was given to the consideration mentioned that the reference was ordered, notwithstanding the issue of fraud, even. The case of Steck v. Colorado Fuel & Iron Co., supra, relied upon by the defendants, has been distinguished in Irving v. Irving, 90 Hun, 422, 35 N. Y. Supp. 744, affirmed, without opinion, 149 N. Y. 573, 43 N. E. 987; the court pointing out that when the long account is brought into the case by a counterclaim setting up a distinct and independent cause of action, and which is not an element in the proof of the plaintiff's cause of action, a reference cannot be ordered, but, where a defense necessarily involving a long account is interposed, then a reference may be ordered, although the cause of action set up in a complaint appears on its face to be nonreferable. In the Irving Case, as in this, there is present the peculiar failure that the long account, although set up in a defense, is nevertheless so brought in as to make it an element in the proof of the plaintiff's cause of action, and consequently cannot properly be considered as a separate or independent issue. Just as in that case the plaintiff had to prove consideration for the note sued upon, which necessitated the examination of numerous stock transactions out of which it was alleged in the answer a false account had been created, and in consideration of which the note in suit had been given, so here the plaintiff will have to go into long accounts to support his averment that margins were kept good.

The principle of the decision in the Irving Case was sustained in Ames v. French, 83 App. Div. 452, 82 N. Y. Supp. 452. That action was brought by stockbrokers against a customer upon an account stated; the account attached to the complaint showing a dealing in various stocks aggregating an amount of over $236,000. The answer alleged that such account was fictitious, false, and fraudulent, and, for a counterclaim, alleged that the defendant employed the plaintiffs to purchase and sell stocks for him; that they did not execute a large number of his orders, and rendered to him false and pretended statements of transactions of purchases and sales ordered to be made, but which had never in fact been made—and prayed for judgment that the plaintiffs be required to account to the defendant for all matters relating to the transactions thus set forth. The reply subsequently denied the allegations of the answer constituting the counterclaim. It was held that the tak-

ing of the account between the parties upon which the defense was based involved the examination of a long account, that would be impracticable before a jury, and that the court below properly ordered the issues referred. In affirming the order, Mr. Justice Ingraham, speaking for a majority of the court, at page 454, 83 App. Div., page 454, 82 N. Y. Supp., said:

"The action being thus upon an account stated, the plaintiffs' cause of action would be made out by proving the statement of the account. The defendant, however, attacks the account as having been false and fraudulent; alleging that the amount claimed is not in fact actually due, and that the reports and statements upon which the accounts between the parties were accepted by the defendant contained false and fraudulent representations. This is a direct attack upon the correctness of the account rendered by the plaintiffs, and upon which the action is brought; and it is quite evident that to determine the issues presented by the pleadings, in order to show that the statement of the account relied upon by the plaintiffs was one based upon a false and fraudulent statement of accounts, the accounting asked for by the defendant will be necessary. Such an accounting for which the defendant asks, and which will be necessary to determine the issues raised by the pleadings, is thus the real issue that is presented, and it would seem to be quite evident that such an accounting will be impossible before a jury. The case is therefore brought within the provisions of section 1013 of the Code of Civil Procedure."

It is also argued in opposition to the motion that difficult questions of law will have to be decided, but it is not apparent that such will be the case. So far as this motion discloses, a competent referee can readily pass upon all questions that will be presented. Motion granted, with $10 costs, to abide the event.

Motion granted, with $10 costs, to abide event.