ELIZABETH S. STEPHENS, Appellant, v. GEORGE B. CRAWFORD, as Executor, etc., of GEORGE R. CRAWFORD, Deceased, Respondent.

Second Department, May 2, 1924.

Bailments — action to recover value of corporate stock alleged to have been loaned to defendant's testator — statement signed by testator and attached to promissory note signed by him shows bailment and not sale of stock — ambiguity in statement in testator's handwriting construed favorably to plaintiff — Statute of Limitations did not commence to run until demand was made for return of stock — action is not barred.

In an action to recover the value of corporate stock alleged to have been loaned by the plaintiff to defendant's testator, in which the defense interposed was that the stock was sold and not loaned, proper construction of a statement written by the testator and attached to a promissory note signed by him shows that the stock was loaned by the plaintiff to the testator for the purpose of having it appear that the testator had a larger interest in the corporation than he actually possessed and that it was never the intention of the parties that the promissory note was in payment for the shares transferred to the testator's name.

If there is any ambiguity in the statement and promissory note as to the legal relations of the parties, the paper must be construed most favorably to the plaintiff, since it was drawn by the testator himself and was wholly in his handwriting.

Since the bailment of the stock was unlimited as to time, a cause of action in favor of the plaintiff did not arise until she had demanded a return of the stock

and its return had been refused, and, therefore, the Statute of Limitations did not commence to run until the date of the refusal to return the stock, which was in January, 1922, and this action which was begun shortly thereafter is not barred by the statute.

APPEAL by the plaintiff, Elizabeth S. Stephens, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 2d day of October, 1923, upon the decision of the court rendered after a trial at the Westchester Trial Term, dismissing the supplemental and amended complaint upon the merits, a jury having been waived at the close of the case.

*Bruce R. Duncan,* for the appellant.

*Milo J. White,* for the respondent.

KAPPER, J.:

The action was originally brought against George R. Crawford, who died after service of the summons and complaint and before joinder of issue. The action was then continued against the present defendant, as executor. Plaintiff seeks to recover the value of 1,000 shares of stock of the Westchester Fire Insurance Company which she claims she loaned to the decedent. The complaint alleges that the plaintiff was and is the owner and entitled to the immediate possession of said 1,000 shares of stock; that on or about January 15, 1899, or prior thereto, a certificate or certificates for said 1,000 shares were in the possession and standing in the name of George R. Crawford and since his death in that of his said executor, and that said stock was in such possession and standing in the name of said Crawford " with the knowledge and consent of the plaintiff and at the request of the said decedent, in order to make it appear that the said decedent had a larger interest in the said Westchester Fire Insurance Company; " that on or about January 19, 1922, plaintiff duly demanded of said George R. Crawford that he deliver to plaintiff said certificate or certificates of stock, with which demand Crawford failed and refused to comply, " and that the decedent wrongfully detained the same and converted the same to his own use, and that the defendant as the executor of the said decedent, still wrongfully detains the same; " that at the time of the making of the said demand and of said failure and refusal to comply therewith, said stock was of the value of $35,000; and the judgment demanded is for that sum with interest from January 19, 1922.

Plaintiff's ownership of the stock was evidenced by a paper writing, the precise form and language of which is as follows:

" NEW YORK CITY, January 15, 1899.

" On demand I promise to pay to the order of Mrs. Elizabeth S. Stephens, Twenty two thousand five hundred Dollars for value received at 5 per cent (semi annually) $22,500.

" GEO. R. CRAWFORD.

" The above note was given in consideration of several note that were canceled and surrendered on account of increased value of Westchester stock (Westchester Ins. Co. stock) Mrs. Stephens purchased from time to time stock and allowed it to be in my name at my request in order to make it appear that I had a larger interest in the company. She owned at the above date one ~~thousand~~ hundred and ninety shares Jany 15, 1890. Her transactions were as follows, January 15, 1890 one hundred and ninety shares stood in her name and was her personal property on that date. She transferred it to me without consideration. She purchased 302 shares of W. H. Pemberton and 300 shares of Jane Hunt and 8 other shares making in all 800 shares. At a later date she purchased 200 shares making a sum total of her holdings 1000 shares, which is her property absolute. I took 689 shares and put it up as collateral at the Chatham Nat Bank (with her consent) for a loan when I borrowed money from said bank for my individual benefit, the balance of 311 she had in her possession but standing in my name. The money Mrs. Stephens had to purchase the above stock came from the following sources — $5000 loaned on her property 152 Macon Street, Brooklyn, N. Y.— $5000 a mortgage on property at New Rochelle (Sibery property) which she had been paid off (Tierney) and the closing out of her shares in Wakefield Building Loan Association, Harlem, N. Y. $4,500 ($14,500.) with the 190 shares making 1000 shares. See records for loan on Brooklyn property. Tierney mortgage at New Rochelle and books Wakefield Building & Loan Association.

" GEO. R. CRAWFORD."

The decedent was an officer of the Westchester Fire Insurance Company, and at one time had been its president. At his death, February 11, 1922, he had attained the age of eighty-one years. The plaintiff is about the same age. Plaintiff and decedent had been intimate friends or acquaintances for sixty years.

It is undisputed that the above quoted paper writing, consisting of one sheet, was signed by the decedent, and that the whole of it was in his handwriting.

It was stipulated on the trial that at the time of George R. Crawford's death there stood in his name on the books of the

Westchester Fire Insurance Company 3,300 shares of stock; and that the value of the 1,000 shares claimed to be owned by plaintiff was, at the time of its demand made on plaintiff's behalf, $34,500, which, with interest computed from the date of such demand amounted to $37,432.50. The paper writing was possessed by plaintiff. When it was given to her does not appear. Its continuous possession by her from the time of its delivery may be presumed in the absence of evidence to the contrary. The only time it appears to have been out of her possession was when it was in the hands of a witness who testified to having shown it to the decedent on January 19, 1922, at which time there was delivered to the latter a written demand signed by plaintiff for the delivery of the stock. The only response to the demand made by the decedent was the statement to the person presenting it, " I don't have any stock belonging to her," and " Yes, those are my signatures [referring to the above paper] but I don't have any stock belonging to her."

No mention was made by him regarding the note appearing at the top of the paper.

An employee of the bank mentioned in the paper testified that loans had been made to the decedent, but that he had no knowledge of what collateral had been " put up," and that at the time of the trial no loans to the decedent appeared of record at the bank as " standing unpaid."

At the close of the trial the jury was waived and the case was submitted to the trial justice for determination on the law and the facts. It was found by him that of the 3,300 shares of stock " standing of record  *  *  *  on the stock books of the Westchester Fire Insurance Company" in the name of the decedent at the time of his death, " 1,000 of these shares *were conveyed by plaintiff to said Crawford* January 15, 1899;" but that the plaintiff " was not the owner, at the time of the death of the said George R. Crawford of said One thousand (1,000) shares of the capital stock of the Westchester Fire Insurance Company, nor was the owner thereof on the 19th day of January, 1922." It was further found that the decedent delivered to plaintiff the note set forth at the outset of the paper writing, *in payment* of said 1,000 shares of stock.

The learned trial justice was of opinion that a proper legal construction of the instrument signed by the decedent did not permit of a finding that the latter held the stock for the plaintiff, but that her only rights were as the holder of the promissory note, because the presence of the note in the instrument showed that the same was given to her as " the purchase price of her stock " which, admittedly, she owned at the time. With this conclusion

10

we are unable to agree. The first difficulty with which this construction confronts us is, that the date appearing above the note conflicts with the decedent's statement that plaintiff " owned " on January 15, *1890, 190* shares, which " stood in her name and was her personal property on that date," and that, following the details of other purchases by her, which made " in all 800 shares " there is his added statement that, " At a *later date* she purchased 200 shares making a sum total of her holdings 1,000 shares, which is her property absolute." It seems clear, therefore, that the decedent wrote this instrument at a date subsequent to that appearing above the note. We think, viewing it in its entirety, that the paper suffices not alone to establish ownership of the stock in the plaintiff but also that decedent's possession thereof was solely for a particular and limited use, wholly for his benefit, " in order," as recited by him, " to make it appear that I had a larger interest in the company." The paper sets forth plaintiff's transactions with great particularity and her various purchases from specified persons, which went to make up the " sum total of her holdings 1,000 shares, *which is her property absolute.*" To trace the whereabouts of the stock whenever it might become necessary for the plaintiff to do so, he declared: " I took 689 shares and put it up as collateral at the Chatham Nat. Bank (with her consent) for a loan when I borrowed money from said bank for my individual benefit, the balance of 311 she had in her possession *but standing in my name.*" Pains are then taken to indicate where plaintiff's money came from with which she bought the stock. The instrument does not recite that the note was given in consideration of the stock, and, indeed, that would have been unnecessary had there been a purchase by him of the stock from her and a note given in payment thereof. But it does recite that the note was given in consideration of several notes that were canceled and surrendered " on account of increased value of Westchester stock (Westchester Ins. Co. stock)." If this note were given as the purchase price, why the need of saying that it was given in consideration of canceled and surrendered notes " on account of increased value " of the stock? It seems to us manifest that the notes were all intended as collateral security in the event of a loss of or depreciation in the value of the stock which the decedent declared the plaintiff allowed " to be in my name at my request in order to make it appear that I had a larger interest in the company." Certainly, had the note been given for the purchase price of the stock, the preceding notes must have accomplished the same purpose; but the preceding notes obviously did not meet the increasing value of the stock, and

hence the present note in lieu of those canceled and surrendered " on account of increased value " of such stock. We think it only fair to assume that the present note was for a larger amount than those canceled and surrendered, and that the recital made by the decedent, of the giving of the present note for the reasons and purposes stated by him, clearly negatives the theory of a purchase. And as further supporting this view is the decedent's statement at the end of the instrument of the sources of the money with which plaintiff purchased the stock. The aggregate of such amounts does not equal the amount written in the note. It may have been the equivalent of the sums represented by the canceled notes, but it does aid in the theory that the note was a collateral instrument and not evidence of a purchase.

Standing alone and without negative proof, this paper writing in our opinion suffices to establish title to the stock in plaintiff and that decedent's possession thereof was solely for the limited purpose which he stated. In that aspect the decedent must be regarded as plaintiff's trustee or bailee of the stock. The learned trial justice conceded that the statement that the 1,000 shares were plaintiff's " property absolute," cast " some doubt " on the theory that the plaintiff sold her stock to the decedent for the note, but added that if there were any doubt whether the plaintiff's right rested upon the note or upon the theory of a bailment, the conclusion should follow that the plaintiff failed to establish the cause of action alleged by the fair preponderance of the credible evidence.

We do not think this conclusion properly followed. If there is ambiguity in the paper, or if it fails to adequately express the agreement that was in the minds of the parties, it must be remembered that not only was the language of this written instrument chosen by the decedent, but that it was wholly in his handwriting, and in such a case the plaintiff is entitled to the most favorable construction thereof. (*Simon* v. *Etgen*, 213 N. Y. 589, 596.) Indeed, the learned trial justice appears to have had this rule in mind, for he said in his opinion: " The rights of the parties must be determined by the proper legal construction to be placed upon an instrument (Plaintiff's Exhibit 2) dated January 15, 1899, wholly in the handwriting of the decedent, and which furnished a high order of proof of whatever legal rights the plaintiff had against the decedent at the time of his death; because there is no dispute that the decedent, a layman, wrote it and made the corrections and interlineations in it all in his own hand."

In *Govin* v. *De Miranda* (140 N. Y. 474) there was found upon the death of the defendant's testator, in his safe a sealed envelope indorsed, " A declaration in favor " of plaintiffs. In the envelope

was a paper signed by the testator, stating that there was in the safe a parcel containing $29,000 in bonds of a railroad named, of which $10,000 belonged to the mother of the plaintiffs, and the balance " belongs " to the aforesaid plaintiffs, " share and share alike." The paper then stated: " No person shall have the right to oppose this declaration, because it is founded on conscience and justice. I reserve this money only for what I may consider proper." As a matter of fact, there were found in the safe thirty-eight of said railroad bonds of the stated value of $1,000 each. The plaintiffs, being the persons named in the paper, claimed nineteen of those bonds and brought suit to recover the possession thereof. Judge EARL, writing for a unanimous court, said: " It does not appear in this action what relationship, if any, the plaintiffs bore to the testator, and no proof was given upon the trial that at the time of the execution of the paper, or at any time prior thereto, the testator owned the bonds mentioned therein. The case depends entirely upon the force and effect to be given to that paper as evidence, and, we think, it shows that nineteen of these bonds belonged to the plaintiffs. They were found in his safe, and there is the unqualified declaration that they belonged to them. We must infer from that language that they came to the ownership of the plaintiffs in some legal way — by purchase or gift from some one; and if there was nothing else in the paper qualifying the declaration no one would dispute that it furnished absolute evidence of their ownership of the bonds.

" But the claim is made on the part of the defendant that the last clause in the declaration qualifies and weakens the force of the prior declaration that the bonds belonged to the plaintiffs. That is as follows: ' No person shall have the right to oppose this declaration, because it is founded on conscience and justice. I reserve this money only for what I may consider proper.' The whole paper must be construed together and all its provisions harmonized, if possible. There is the unqualified declaration that they belonged to the plaintiffs, and that their claim to them was founded upon conscience and justice. Now, what did he mean by saying, ' I reserve this money only for what I may consider proper? ' Does that imply that his previous declaration was untrue? The bonds were in his possession, as one must infer, under some agency or possibly upon some trust, under which he had authority to convert them and apply the proceeds consistently with the ownership of the bonds by the plaintiffs. It cannot be supposed that after declaring that the bonds belonged to the plaintiffs as matter of conscience and justice he reserved the right to dispose of them for his own benefit as he pleased. The reservation must be made con-

sistent with the prior declaration of ownership, if possible; and that it can be is quite apparent. Whatever power or agency he reserved to himself in the bonds, to be exercised for the benefit of the plaintiffs, was revoked by his death, the reserved power never having been exercised. We think, therefore, that the paper furnishes, in the absence of any evidence explaining or contradicting it, satisfactory proof of the ownership of the bonds mentioned therein by the plaintiffs."

We think the case cited furnishes abundant authority in support of the claim of the plaintiff at bar, both as to her title and the sufficiency of her proofs. If anything, the fact that plaintiff was the possessor of the instrument rather than that it was found after his death among decedent's effects as in the case cited strengthens plaintiff's evidence of her claim.

It is urged by the respondent that the six-year Statute of Limitations had run against the plaintiff's claim; and cases are cited by him to the effect that where *money* is received by one to and for the use of another under such circumstances that it is his duty at once to pay it over, an action for money had and received may be brought to recover it *without a demand,* and in such a case the Statute of Limitations begins to run from the date of the receipt of the money. Amongst the cases cited is *Mills* v. *Mills* (115 N. Y. 80), where the action was brought to recover moneys received by the defendant on the sale of lands. It was held that the six-year Statute of Limitations applied, the court holding that the defendant received money belonging to another and became a debtor for the same. The rule was there pointed out, however, that had the suit been brought against the defendant as a trustee, the Statute of Limitations would not begin to run in his favor "until he repudiated the trust."

The defense of the Statute of Limitations was urged at the trial. As to this point, the learned trial justice said: " As the complaint states a cause of action for a breach of contract of bailment of plaintiff's stock, unlimited as to time, for the benefit of the decedent-bailee, so that it might be made to appear that he owned more shares of stock by 1,000 than he really did own in the corporation, if we assume the fact of the bailment as pleaded, the bailor-plaintiff's cause of action accruing in that event by reason of the failure of the decedent to deliver the stock to her upon her demand, did not accrue until January 19, 1922, the date of the conceded demand, when for the first time, as far as appears, there was a denial of the bailment by the decedent-bailee, and, according to plaintiff's contention, a conversion of the stock by him; and the cause of action, in that event, would have accrued to the plaintiff and the statute would have commenced to run only on January 19, 1922, and the statute would not have constituted a bar."

With this construction of the complaint we are in accord. " A bailor's right of action against his bailee accrues at the time of the latter's breach of duty under the contract of bailment, and the Statute of Limitations then begins to run. Unless the term of the bailment is limited no lapse of time bars the bailor's right to the property, and his right of action does not accrue and the statute does not begin to run until denial of the bailment and conversion of the property by the bailee or someone claiming under him. To set the statute in motion there must be some act of the bailee inconsistent with the bailment and changing the nature of his holding, such as a refusal to deliver on demand." (See 25 Cyc. 1094, and cases there cited.)

Our courts have repeatedly held that where a complaint contains a statement of facts constituting a cause of action on contract, which is sustained by proof of such facts upon the trial, a recovery is authorized although the complaint may be in form for a conversion (*Conaughty* v. *Nichols*, 42 N. Y. 83; *Greentree* v. *Rosenstock*, 61 id. 583; *Town of Green Island* v. *Williams*, 79 App. Div. 260; *People* v. *Wood*, 121 N. Y. 522; *Price* v. *Parker*, 44 Misc. Rep. 582; *Ganley* v. *Troy City National Bank*, 98 N. Y. 487, 494); and where, instead of relying on the conversion, the plaintiff, having the right to sue for a breach of the contract of bailment, makes out a case accordingly, the Statute of Limitations does not commence to run until after demand. (*Ganley* v. *Troy City National Bank, supra; Lightfoot* v. *Davis*, 198 N. Y. 261.)

For the foregoing reasons, we think the plaintiff should have prevailed on the trial, and accordingly reverse the judgment upon the law and facts, and direct judgment in favor of the plaintiff for the sum of $37,432.50, with interest from June 19, 1923, together with the costs of the trial and of this appeal. The findings of fact numbered 1 to 7, inclusive, should be reversed; and the court finds the plaintiff's proposed findings and proposed conclusions of law as presented to the trial court, excepting those found, which we approve.

KELLY, P. J., RICH, KELBY and YOUNG, JJ., concur.

Judgment reversed upon the law and the facts, and judgment unanimously directed in favor of the plaintiff for the sum of $37,432.50, with interest from June 19, 1923, together with the costs of the trial and of this appeal, in accordance with opinion. The findings of fact numbered 1 to 7, inclusive, are reversed; and this court finds the plaintiff's proposed findings and proposed conclusions of law as presented to the trial court, excepting those found, which we approve. Settle order on notice.