JESSE J. MOORE, Respondent, *v.* EDWARD S. MADDOCK, Appellant.

First Department, November 9, 1928.

*Frank H. Towsley* of counsel [*Dills & Towsley,* attorneys], for the appellant.

*A. Furman Greene,* for the respondent.

MERRELL, J.    The action was brought to recover damages which the plaintiff alleges he sustained as the result of a breach of contract entered into by the defendant with the plaintiff whereby the defendant assumed to act in behalf of a domestic corporation

known as the Continental Guaranty Corporation, of which the defendant was at the time of making the contract and still is the president. It is alleged in the complaint that the said Continental Guaranty Corporation was and is engaged in business of financing incident to the purchase and sale of automobiles. Plaintiff alleges that in or about the month of August, 1921, he was in the employ of said corporation as manager of its Philadelphia, Penn., office, principally in the promotion of the business of said corporation in the financing incident to the automobile industry. Plaintiff further alleges in the complaint that on or about and in the month of March, 1921, the defendant, then president of the Continental Guaranty Corporation, represented to plaintiff that said corporation was desirous of extending its financial activities to include the field of financing railroad and railway equipment, and that he was duly authorized by said corporation, as its president, to devise ways and means of organizing another corporation to engage in the business of financing railroad and railway equipment, either as a subsidiary of or in co-operation with said Continental Guaranty Corporation; that at that time the defendant well knew that the plaintiff had been formulating plans for the organization and promotion on plaintiff's own account of a corporation to engage in a similar line of business. Plaintiff then alleges that on or about August 24, 1921, the defendant represented to plaintiff that he was duly authorized, as president of the said Continental Guaranty Corporation, to act as the agent and representative of said corporation, and that then and there the defendant entered into an agreement with plaintiff wherein and whereby it was agreed between the plaintiff on his own behalf and by the defendant on behalf of said Continental Guaranty Corporation that the plaintiff should abandon and forego the plans which had been formulated by him for the organization and promotion on his own account of the proposed corporation and should co-operate with the defendant in the development and perfection of plans for the organization and promotion of such a corporation, either as a subsidiary of or in co-operation with said Continental Guaranty Corporation; that it was further agreed and provided that the plaintiff should proceed with the work of bringing the new project to the attention of the principal rolling stock builders and allied industries in the United States for the purpose of securing their interest and participation in the proposed undertaking and to secure business for the proposed corporation; that in and by the terms of said agreement it was further provided that the defendant, acting as president of and agent of the Continental Guaranty Corporation, should proceed forthwith with the organization of a corporation under the laws

of the State of Delaware to be called the International Guaranty Corporation, if such name should be available, or by some other name, and that the proposed corporation should have an authorized capital stock of 100,000 shares of eight per cent cumulative preferred non-voting stock, of the par value of $100 each, with 1,000,000 shares of common stock without par value; that in consideration of the services to be rendered by plaintiff, plaintiff should receive 100,000 shares of the common stock, and in addition thereto there should be divided the sum of $50,000 equally between the plaintiff, one H. L. Wynegar, and the defendant herein, which said sum of $50,000 represented five per cent allowance for the intended sale of 10,000 shares of the preferred stock of the proposed corporation of the par value of $1,000,000. Plaintiff alleges that in pursuance of the agreement aforesaid and in reliance upon the defendant's representation that he was duly authorized to act as the agent for the said Continental Guaranty Corporation in the making of said agreement and believing in the truth thereof, the plaintiff immediately discontinued and abandoned the plans which he had formulated for the organization of such a corporation on his own account, and at once proceeded to co-operate with defendant in the execution of the plans contemplated by said agreement; that the plaintiff at once proceeded with the work of bringing the new project to the attention of many rolling stock manufacturers and allied industries throughout this country and proceeded with the work of enlisting their interest and participation therein; that through plaintiff's efforts a large number of such manufacturers throughout the United States expressed their interest in the new project and signified their readiness and willingness to avail themselves of the proposed plan for financing the sales of rolling stock and other railroad equipment, and their willingness to give their business to the proposed corporation; and that a great many persons who had been interviewed by plaintiff expressed their willingness to become financially interested through the purchase of stock of the proposed corporation. Plaintiff further alleges that it was thereafter ascertained by defendant that the name International Guaranty Corporation of Delaware was not available, and that the name of the proposed corporation was changed to the International Equipment Corporation, and that such corporation was organized and incorporated under the laws of the State of Delaware on or about October 10, 1921, for the purpose of engaging in the proposed business. Plaintiff further alleges that subsequently the Continental Guaranty Corporation claimed that the defendant had no authority to act for it as agent or otherwise in the making of said agreement, and that the plaintiff believes that the defendant

did not have such authority from the Continental Guaranty Corporation to act as its agent in the premises; that the want of such authority was unknown to the plaintiff at the time he entered into such agreement with the defendant, and that by reason thereof the defendant became personally and individually liable to the plaintiff for the performance of said agreement. Plaintiff further alleges that in violation of said agreement and in disregard of his liability and obligation to the plaintiff thereunder, the defendant on or about February 17, 1922, wrongfully and without just cause repudiated the said agreement and notified the plaintiff that the plans for the development of the project thereunder had been abandoned by the defendant and by the said Continental Guaranty Corporation; that he wholly failed to cause to be issued to the plaintiff the aforesaid common stock of the International Equipment Corporation to which the plaintiff was entitled under said agreement, or any part thereof, and failed to pay to plaintiff the sum of $16,666.66, or any part thereof, which sum represented one-third of the $50,000 which was to have been equally divided among the plaintiff, the defendant and the third party above mentioned. Plaintiff further alleges that had the business proceeded as contemplated instead of being abandoned, the common stock would have been reasonably worth $25 per share, or $250,000.

In plaintiff's affidavit, filed in answer to the defendant's motion to dismiss, the plaintiff amplifies the allegations of his complaint, and therein the plaintiff sets forth a copy of a letter addressed to plaintiff at Philadelphia, Penn., under date of February 17, 1922, written upon the stationery of the Continental Guaranty Corporation, bankers, Madison avenue at Thirty-eighth street, New York city, and signed by the defendant, as president, as follows:

" Continental Guaranty Corporation
" Bankers
" Madison Avenue at 38th Street, New York
" *February* 17, 1922.

" J. J. Moore, Esq.,
" Philadelphia.

" My dear Mr. Moore.— We have made up our minds to drop the International Equipment Corporation as a separate enterprise and if we use that Corporation at all, it will be merely to clear merchandise transactions beyond our charter powers.

" I appreciate the hard work you have put in on the promotion of this company but as that work will no longer be required and as our policy is to cut off all expense in connection with the solicitation of motor car business in the field, it seems necessary to dispense with your services.

" I have instructed Mr. Franklin to continue your salary to March 31, which is more than the usual notice, in recognition of the earnest work you have done upon International and you may consider your time entirely your own to seek another connection from now on, although you will be right in saying that you are in the employ of the corporation up to March 31. If I can help you with any recommendations, I shall be happy to respond to any inquiries.

" Please leave to me the advising of the interested manufacturers concerning the International as I wish to tell them of our new plans at the same time.

" Very truly yours,

" (sgd.) E. S. MADDOCK

*President.*"

" ESM:FS

This was the first intimation which the plaintiff received of any repudiation of the contract which the defendant had entered into with the plaintiff in behalf of the Continental Guaranty Corporation. This letter, written less than six months after the making of the contract in suit, very coolly advises the plaintiff that " we have made up our minds to drop the International Equipment Corporation as a separate enterprise." The letter is a very cold-blooded document, and while it expresses appreciation of the hard work which the plaintiff had performed in promoting the proposed company under the contract in question, very coolly advises him that from thenceforward his services will be dispensed with, but that in recognition of his earnest work performed in furtherance of the contract, his salary would be continued until March thirty-first following, and that the writer would be happy to respond to any inquiries from those with whom the plaintiff might seek future business connections. Nowhere in the letter is there any suggestion that in the making of the contract for the formation of the new corporation, the defendant, president of the Continental Guaranty Corporation, had exceeded his authority. This letter was received by the plaintiff at Philadelphia on either the 18th or 19th of February, 1922. The plaintiff then brought action against the Continental Guaranty Corporation for breach of contract. The corporation answered in the action on March 16, 1923, and for the first time the plaintiff was informed that the defendant Maddock, in making the contract, had acted without any authority from the corporation. It will be borne in mind that the letter repudiating the contract and discharging the plaintiff was written upon the stationery of the Continental Guaranty Corporation on February 17, 1922, and was signed by defendant *as president of said corporation.*

The question involved upon this appeal is as to when a cause of action accrued to the plaintiff against the defendant for a breach of the contract aforesaid. The court at Special Term held that no cause of action accrued to plaintiff until the plaintiff learned of the repudiation by the defendant and the Continental Guaranty Corporation of the agreement.

The complaint fully sets forth the facts, from which it sufficiently appears that the defendant fraudulently concealed from the plaintiff his lack of authority to represent his corporation, pretending at all times that he had full authority to bind said corporation. The defendant even persisted in concealing his want of authority from the plaintiff in his letter of February 17, 1922, above quoted, making no claim therein but what he was authorized to represent his corporation, writing the letter upon the stationery of the Continental Guaranty Corporation and signing it as president of his corporation. It seems to me the complaint sufficiently sets forth the fraudulent concealment by the defendant of his want of authority. I think the complaint is susceptible of no other interpretation.

By section 11 of the Civil Practice Act it is provided: " Mode of computing periods of limitation. The periods of limitation prescribed by this article, except as otherwise specially prescribed therein, must be computed from the time of the accruing of the right to relief by action, special proceeding, defense or otherwise, as the case requires, to the time when the claim to that relief is actually interposed by the party as a plaintiff or a defendant in the particular action or special proceeding." The question, therefore, is, when did the plaintiff's cause of action accrue? It is the contention of the defendant, appellant, that plaintiff's cause of action is for damages for breach of warranty of authority to make the contract in behalf of the corporation, and that the defendant, being without authority to represent the corporation and to make the contract in its behalf, became liable immediately upon the making of the contract, namely, on August 24, 1921. Plaintiff contends that this is not strictly an action for damages for breach of warranty as to the defendant's authority, but that the action is, in fact, upon the contract itself, and the contract not having been repudiated until February 18 or 19, 1922, the action brought thereon by the service of the summons and complaint herein on February 17, 1928, was not barred by the Statute of Limitations, and that service of process was, therefore, within the six-year period. While the earlier authorities in this State seem to hold that the liability of an agent was upon the contract itself, and that where an agent makes a contract assuming to represent his principal when he has no right or athority from the principal, the contract is

to be deemed his own and he may be sued thereon. However, with the decision of *White* v. *Madison* (26 N. Y. 117), and from then on, the rule of law seems to have been changed. The later authorities all seem to hold that the liability of an agent to one dealing with him without knowledge of any limitations upon his authority is not upon the ground that the contract is that of the agent, but on the ground that he warrants his authority; and his liability is not measured by the contract, but is for all injuries resulting from his want of power. The case of *Taylor* v. *Nostrand* (134 N. Y. 108) seems directly in point. In that case it was distinctly held that the liability of the agent in such a case is based, not on the ground that the contract is his own, but on the ground that he warrants his authority, and so his liability is not necessarily measured by the contract and embraces all injuries resulting from his want of power. I do not think it is very material in this case whether the cause of action is based upon the contract itself or is for damages for the breach of warranty of the agent's authority. I think the court correctly held that no cause of action accrued to the plaintiff until there was a definite breach of the contract. The contract itself did not provide any specific time when it was to be performed. Manifestly the formation of the corporation which was afterwards organized, the interesting of consumers of railway equipment, and, particularly, the interesting of financiers who were willing to invest in the proposed enterprise, required the expenditure of considerable effort and the consuming of considerable time. The contract may have well provided a time within which the contract should be consummated. This was not done, and in the absence of such limitation of time for the performance of the contract, the law provides that performance shall be within a reasonable time. As to what constitutes a reasonable time would be for determination upon the trial by the jury.

It is the contention of the appellant upon this appeal that the cause of action arose immediately when the contract was made and when the defendant exceeded his authority in entering into it in behalf of his corporation. Such claim, it seems to me, is absurd under the circumstances. The plaintiff certainly could have maintained no action successfully at any time prior to the repudiation of the contract by the defendant. Up to that time the plaintiff had a right to believe that everything would be carried out by the defendant's corporation in accordance with the contract which he had made. Surely no action could have been successfully maintained, either against the principal or its agent, until a breach occurred in February, 1922. Even though the defendant might not have had authority to represent his corporation, the cor-

poration might well have concluded to abide by the action of its president in making the contract and to ratify the same. Such ratification would have made the contract that of the corporation. As a matter of fact, as before stated, the plaintiff had no intimation whatever of lack of authority until the answer of the corporation was served in his action against it in March, 1923. It seems to me that the claim of the defendant that the cause of action arose immediately upon the making of the contract, and that said contract was broken as soon as entered into, is absurd upon its face. Suppose for example the contract had provided that it was not to be performed until after the expiration of six years — not an absurdly long period of time for the organization of such an enterprise — and at the end of the six years the corporation refused to perform upon the ground that its president had no authority to bind it. Such being the fact, the corporation is out, and more than six years having elapsed since the contract was made, the agent is out, and the plaintiff is left without remedy. Certainly the plaintiff could not in such a case have brought action for breach of contract until after the expiration of the six years, because the contract was not to be sooner performed. He could not maintain an action against the agent after the six years, as he would be barred by the Statute of Limitations. (See Civ. Prac. Act, § 48.) I think this illustrates the absurdity of the appellant's position. I think the liability of the agent arose as the result and as the consequence of his lack of authority to act for his corporation. Until such lack of authority became known there surely was no basis for an action against him. In Wood on Limitations (Vol. 1 [4th ed.], 721) it is said: " Where a person claims to act as the agent of another, without any authority whatever, or where he is in fact an agent but acts in excess of either his real or apparent authority, a person who has dealt with him on the credit of his supposed principal may bring an action against the agent at any time within six years from the time when he has notice of the fact that the acts were unauthorized."

In connection with the foregoing statement from the textwriter, the case of *Flack* v. *Haynie* (18 Tex. 468) is cited. The court said in that case: " The cause of action against the defendant was his misrepresentation of his authority, which occasioned the giving of the credit; and there can be no question that the right of action accrued to the plaintiff as soon as he was apprised of the misrepresentation." It seems to me that the rule laid down in Wood on Limitations, above quoted, as applied to the case at bar is the only sensible one, and that it does not matter whether the liability of the agent is upon the contract itself or upon a breach of an implied warranty of authority. Certainly no breach of warranty

of authority occurred until the time for performance occurred, and until the plaintiff discovered that the agent's principal refused to ratify the contract. Even though the agent's liability on his implied warranty attaches the instant the contract is made, it seems to me his liability is a continuing one, and that no action will lie until a breach thereof occurs, when the agent refuses to perform the contract.

I am, furthermore, of the opinion that a cause of action did not accrue against the agent for breach of warranty of his authority until advised by the answer of the corporation in the plaintiff's action against it on March 16, 1923, when, for the first time, the plaintiff was advised that the Continental Guaranty Corporation claimed that the defendant had acted without authority to bind it. While the notice of the defendant's president to the plaintiff, under date of February 17, 1922, definitely asserted that neither the defendant nor his principal would perform the contract, there was no intimation therein of any claim that the agent had exceeded his authority. However, the learned justice at Special Term took the view that a cause of action for breach of warranty did not accrue until the plaintiff learned of the repudiation or breach of the contract on February 18 or 19, 1922.

The case of *Titus* v. *Wallick* (222 App. Div. 17) presents a very analogous situation to that involved upon this appeal. That action was brought to determine the ownership of certain corporate stock. Plaintiff claimed to own the stock, although certificates of stock had been in the possession cf the defendant in excess of six years prior to the bringing of the action. The question arose as to when the Statute of Limitations began to run, as to whether it was from the time when the stock was delivered into possession of the defendant or from the time when the defendant refused to transfer it to the plaintiff. The court held that the cause of action accrued only when the plaintiff for the first time learned that the defendant repudiated his agreement to retransfer the stock to plaintiff. The court said in that connection: " We are further of the opinion that no Statute of Limitations stands in the way of a recovery by the plaintiff herein. The evidence was ample to justify a finding of fact that plaintiff first learned of defendant's repudiation of his agreement to a retransfer the Secor stock to the plaintiff on September 12, 1923. In our opinion the Statute of Limitations did not begin to run until such knowledge came to the plaintiff. (*Treadwell* v. *Clark*, 190 N. Y. 51; *Stephens* v. *Crawford*, 209 App. Div. 142; affd., 239 N. Y. 535.) "

Again the situation is quite analogous to that in relation to a warranty of title on the sale of personal property. At the present

time the law governing warranties of sales of personal property is fixed by the Sales of Goods Act (Laws of 1911, chap. 571, adding to Pers. Prop. Law, art. 5) and decisions thereunder. Prior to the adoption of the Sales of Goods Act the courts held under the common law that a warranty of title in the sale of personal property was not broken until the vendee was disturbed in his possession. Cases supporting that rule are cited in McKinney's Consolidated Laws of New York, Book 40, Personal Property Law (at p. 152) under the caption, " Time of Breach." In that connection the following comment by McKinney is made: " As to the time of breach, the New York courts seem to have regarded the warranty of title as analogous to the covenant of quiet enjoyment in the case of a sale of land, and to have held that no cause of action arises until the buyer is disturbed in his possession. The mere fact that at the time of the sale the seller was not the owner did not at common law create a breach of the warranty of title. *Sweetman* v. *Prince* (1863), 26 N. Y. 224, 233; *O'Brien* v. *Jones* (1883), 91 N. Y. 193, 199; *Case* v. *Hall* (1840), 24 Wend. 102, 103, 35 Am. Dec. 605; *Converse* v. *Miner* (1880), 21 Hun, 367."

It may also be suggested that the warranty in question may be regarded as a future and continuing warranty and that no cause of action accrued to the plaintiff until he was actually damaged. The courts have held that where the warranty was a future one, a cause of action did not accrue until plaintiff actually sustained damage. It seems to me that the liability of the defendant to the plaintiff depended entirely upon a ratification or disavowal by his principal of the contract which he made. This being a future warranty it was not broken until plaintiff sustained damages by reason of its non-performance. Until the time for the performance of the contract arrived no action could have been maintained by plaintiff, even for nominal damages. I think no cause of action accrued to the plaintiff until the corporation repudiated its president's action and certainly not until he learned that the contract would not be performed.

Under all the circumstances, therefore, we think the order appealed from should be affirmed, with ten dollars costs and disbursements, with leave to the defendant to answer within twenty days on payment of said costs.

DOWLING, P. J., FINCH, MCAVOY and O'MALLEY, JJ., concur.

Order affirmed, with ten dollars costs and disbursements, with leave to the defendant to answer within twenty days from service of order upon payment of said costs.