Lyman v J.P. Morgan Chase & Co. (2021 NY Slip Op 06954)





Lyman v J.P. Morgan Chase & Co.


2021 NY Slip Op 06954


Decided on December 14, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 14, 2021

Before: Kapnick, J.P., González, Rodriguez, Pitt, JJ. 


Index No. 450919/20 Appeal No. 14803 Case No. 2020-04672 

[*1]Richard Lyman Also Known as Richard P. Lyman, Plaintiff-Appellant,
v
J.P. Morgan Chase & Co. as Successor in Interest to Hambrecht & Quist, et al., Defendants-Respondents.


Joseph T. Adragna, Huntington, for appellant.
Duane Morris LLP, New York (Charles J. Keeley of counsel), for respondents.



Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about November 23, 2020, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the action as time-barred, unanimously modified, on the law, to reinstate the first cause of action for breach of bailment contract, and otherwise affirmed, without costs.
In this 2019 action sounding in breach of bailment contract, conversion, and fraud, plaintiff Richard Lyman alleges that in September 2000, approximately 26,00o shares of stock then worth over $450,000 were sold without his authorization from an account at defendant Hambrecht & Quist (Hambrecht), which had been acquired by defendant JP Morgan in 1999. As set forth in the complaint, plaintiff was a founder and general partner of Health Care Ventures, LLC (HCV), a firm which was formed to invest in health care companies. Beginning in 1993, HCV had a banking relationship with Hambrecht. In 1999, HCV acquired the stock of Shire Pharmaceuticals Corporation (Shire), and in 2000 HCV caused a distribution of the Shire shares to be made to its general and limited partners. As a general partner, plaintiff received 26,225 shares of Shire stock, which was placed by HCV on deposit in a house account at Hambrecht.
In January 2019, Shire was acquired by another pharmaceutical company. At or before the time of the acquisition, Lyman contacted JP Morgan for the purpose of obtaining and selling his shares of Shire and was informed that they had been sold in September 2000 for $452,659.89. Plaintiff alleges that after investigation, he learned that the proceeds from the sale of his stock had been distributed by JP Morgan in several transfers between September 19, 2000 and December 31, 2001, including $30,000 of taxes to the IRS in plaintiff's name. The other transfers were three wire transfers to three different banks with the remaining balance expended through use of miscellaneous checks and Visa card transactions. The entire sum had been distributed, and the account in his name had been closed.
The complaint alleges that he did not authorize the sale of the stock or receive any money from the sale; that he did not authorize the wire transfers to the three banks and did not maintain accounts at any of those banks; that he did not authorize payment to the IRS for $30,000; that he never had a personal account at Hambrecht or JP Morgan as successor in interest to Hambrecht, but that the banking relationship was between Hambrecht and HCV; and that he was never notified by defendants that a bank account had been created in his name. He further alleges that Hambrecht provided regular account statements only to HCV and not to any of HCV's partners; that he did not review any financial or banking statement of HCV or its ventures and that he never received any account statement or other communication from defendants including the account statements in 2000 and 2001 that would have shown the transactions [*2]in dispute.
While the three-year statute of limitations for conversion (CPLR 214 [3]) accrued on the date the conversion occurred, not from the discovery of the conversion or the exercise of due diligence to discover (see Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex., 87 NY2d 36, 44-45 [1995]), the six-year statute of limitations for breach of the bailment contract (CPLR 213 [2]) began to run when plaintiff demanded return of the stocks and defendants did not deliver them (see CPLR 206 [a][2]; Ganley v Troy City Natl. Bank, 98 NY 487, 494 [1885] [the defendant bank was bound to keep the treasury notes safe for the plaintiff, and to deliver them up to her upon her demand; "[s]he could not put the defendant in default upon its contract until a demand."]; see also Stephens v Crawford, 209 AD 142, 150 [2d Dept 1924], affd 239 NY 535 [1924]). Thus, the cause of action for breach of bailment contract is not time-barred.
Plaintiff's claim for fraud was incidental to his conversion claim, and thus was subject to the same limitations period as applicable to the conversion claim (see Car Park Sys. of N.Y. Inc. v Ull, 154 AD3d 444 [1st Dept 2017]).THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 14, 2021