BAXTER D. WHITNEY *vs.* FITCHBURG RAILROAD COMPANY.

Worcester.     October 2, 1900. — May 21, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, HAMMOND, & LORING, JJ.

The owner of a mill pond created by damming a natural stream conveyed to a railroad company, for the purpose of constructing and maintaining its road, land on both sides of the pond "with all privileges, and appurtenances thereto belonging," "Reserving, however, to the grantor, his heirs and assigns forever the right to all the water power created by a dam on the premises of the present height of the rolling part of the dam now standing on the premises." *Held,* that by this reservation the owner reserved the right to have all the water that naturally would come down the stream to the dam flow over it, and that any

substantial diversion of the water by the railroad company, as it passed over its land before reaching the dam, would constitute an interference with the rights of the mill owner which would be enjoined in equity.

A diversion of water from a mill pond amounting to twenty-six one hundredths of a horse power a day, the total power of the mill owner's privilege being two hundred horse power a day, is a substantial diversion which, if unauthorized, will be enjoined in equity. Whether an unauthorized diversion not substantial would be enjoined, *quære.*

BILL IN EQUITY to restrain the defendant from taking water from the plaintiff's mill pond and for the assessment of damages caused by such taking, filed August 10, 1894.

In the Superior Court the case was reserved by *Gaskill*, J., for the consideration of this court on the bill, answer and agreed facts.

The following appeared from the agreed facts: In 1849, the plaintiff owned a large tract of land in Winchendon, in the county of Worcester, which he used as a mill estate, there being thereon a large mill with a water privilege consisting of an artificial or flowed pond supplied by a natural stream. On October 15, 1849, the plaintiff made with the Cheshire Railroad Company the indenture which is described in the opinion of the court, under which the defendant claimed the right to use the water taken, and which contained the reservations under which the plaintiff denied its right to do so. This indenture conveyed to the railroad company, for the purpose of constructing and maintaining its road, land on both sides of the plaintiff's mill pond. Shortly after 1849 the railroad company constructed its tracks along the mill pond over the land conveyed by the indenture, crossing the pond at or near the plaintiff's dam. Since then the plaintiff has maintained his flowage at and not above the height specified by the terms of the indenture.

By St. 1887, c. 389, the Cheshire Railroad Company was authorized to unite and consolidate with the Fitchburg Railroad Company, the uniting corporations to form one corporation under the name of the Fitchburg Railroad Company, and by the terms of the act the united corporation, the defendant, was to have all the rights, powers, privileges and immunities, and be subject to all the duties and liabilities of the uniting corporations. The consolidation was made as authorized.

The water in the stream which supplies the plaintiff's mill

with power, other than that saved by reservoirs, would not amount to over ten horse power in the dry seasons, and with the present storage reservoirs makes a power at the mill of about two hundred horse power, varying as to the quantity of water in different seasons. The defendant, some years since, asked of the plaintiff leave to put in a pipe entering the canal which carries the water from the plaintiff's pond to his mill wheels below the gates through the masonry at the side of the canal and on land owned and occupied by the plaintiff. This license was granted, and for many years the defendant maintained by this license a pipe by which it took water from the plaintiff's canal, using it in its railroad operations. Subsequently this license was revoked by the plaintiff, and the defendant abandoned the pipe, but has since laid a new pipe through the masonry at the side of the canal above the gates, within the limits of its location, and by means of this pipe took and still takes water from the pond over the land within the limits of its location. The place where the pipe now enters the pond is within the tract of land which was conveyed to the Cheshire Railroad Company by the plaintiff by the indenture of October 15, 1849.

It is agreed that the amount of water taken by the defendant from the plaintiff's pond is about forty thousand gallons a day, and that this would amount to twenty-six one hundredths of a horse power a day. The total power of the plaintiff's privilege is two hundred horse power a day.

The water taken by the defendant is used in its locomotive engines for the purpose of generating steam.

The case was submitted on briefs to all the justices except *Lathrop,* J.

*F. B. Smith, T. H. Gage, Jr. & W. S. B. Hopkins,* for the plaintiff.

*G. A. Torrey,* for the defendant.

MORTON, J. This is a bill in equity to restrain the defendant from taking water from the plaintiff's mill pond and for the assessment of damages caused by such taking. The case was reserved on the bill, answer and agreed facts. The agreed facts show that in 1849 the plaintiff was the owner of a large tract of land in Winchendon on which was a mill, and a dam, mill pond and water privilege. The water privilege furnished power to

the mill.  The mill pond was an artificial pond and was supplied by a natural stream.  It is the taking from this pond that is complained of, and the agreed facts show that the quantity taken is a substantial quantity.  The defendant seeks to justify the taking as a riparian proprietor under and by virtue of an indenture executed in 1849 between the plaintiff and the Cheshire Railroad Company to whose rights the defendant has succeeded. It is conceded that the Cheshire Railroad Company became under the indenture of 1849 a riparian proprietor on the pond and stream.  But the plaintiff contends that under the reservations contained in the indenture neither the Cheshire Railroad Company nor the defendant as its successor has any right to take water from the pond and stream as a riparian proprietor or otherwise in such quantity as to constitute a substantial interference with the water power reserved in the indenture.  And we are of opinion that this contention is right.  By the indenture the plaintiff conveyed to the Cheshire Railroad Company its successors and assigns a portion of the tract referred to above " with all privileges, and appurtenances thereto belonging, . . . for the purposes and use of constructing, using and maintaining a railroad thereon " on condition that the land should revert to the plaintiff if it should cease to be used for a railroad or for a public thoroughfare by the grantee or its assigns.  The plaintiff expressly reserved, however, in the indenture to himself " his heirs and assigns forever the right to all the water power created by a dam on the premises of the present height of the rolling part of the dam now standing on the premises," and also of flowing the water in the pond six feet and a half above the cap of the rolling part of the dam as it then was unless the county commissioners should certify within a certain time that the flowing might be raised seven feet above the cap without endangering the railroad, in which case the grantor reserved to himself and his heirs and assigns the right to flow to the height of seven feet.  In addition to these the indenture contained other reservations to the plaintiff his heirs and assigns relating to the dam, to the flow of the water, to canals and flumes, to the right to construct and maintain gates, to the right to enter and repair and to other matters relating to the water privilege.  It also contained a covenant on the part of the railroad company that the plaintiff his

heirs and assigns should have the " right to use and enjoy the rights and privileges hereinbefore reserved to him and them." Manifestly, we think, one object of the indenture was to reserve to the plaintiff his heirs and assigns the full and unobstructed and continued use and enjoyment of the water privilege. By reserving to himself " his heirs and assigns forever the right to all the water power created by a dam on the premises of the present height of the rolling part of the dam now standing on the premises," the plaintiff reserved to himself the right to have all the water that would naturally come down the stream to the dam flow over it, and any substantial diversion by the defendant of water which had once got into the stream and which but for such diversion would have flowed over the dam would constitute an interference with the plaintiff's rights. *Bliss* v. *Rice*, 17 Pick. 23. Though the language is that of reservation rather than of grant, the plaintiff's rights are not affected, it seems to us, by that circumstance. *Bowen* v. *Conner*, 6 Cush. 132. Indeed, strictly speaking, a reservation operates by way of implied grant. It is not necessary to consider whether the plaintiff would be entitled to relief in case of any unauthorized diversion whether the quantity diverted was substantial or not. *Appleton* v. *Fullerton*, 1 Gray, 186. The quantity diverted amounted to twenty-six one hundredths of a horse power a day and was, as already stated, a substantial quantity.

The acts of the parties, though not decisive, would seem to be more in harmony with the construction which we have adopted than with any other view. The defendant applied to the plaintiff for leave to put a pipe into the canal on the plaintiff's land. Permission was granted and for many years the defendant took water by means of the pipe and used it in its railroad operations. Subsequently the license was revoked and then the defendant laid the pipe which is complained of and which is within its own premises. If the defendant understood that it had the right which it now claims there would seem to have been no good reason why it should have gone to the plaintiff for permission to take water from the canal on his land.

The result is that we think that there should be a decree for the plaintiff.

*So ordered.*