BAXTER D. WHITNEY *vs.* CHESHIRE RAILROAD COMPANY
& another.

Worcester.    October 3, 1911. — November 29, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Easement*, Contingent.    *Equity Jurisdiction*, Specific performance.    *Laches*.    *Contract*, Performance and breach.

A conveyance to a railroad corporation of a strip of land to be used for the construction and maintenance of its railroad thereon, reserving to the grantor certain water rights, privileges and easements and also the right of carrying water from the grantor's mill pond through a canal across the railroad embankment, if such a canal shall be constructed by the railroad corporation, in accordance with the agreement between the parties, upon the request of the grantor and the payment

of a certain sum of money and the doing of certain acts by him, reserves no ease-
ment of a right to carry water through the canal except upon the contingency
of such a canal being constructed.

In a suit in equity against a railroad corporation to enforce the specific perform-
ance of a covenant of the defendant to construct a canal or culvert through an
embankment of the defendant's railroad, to connect with a mill pond of the
plaintiff, within six months after being requested to do so by the plaintiff "at
any suitable and proper season of the year and being paid by him or his heirs
or assigns the sum of thirty dollars," provided that the plaintiff should draw
down the water of the pond so as to admit of the work being done conveniently
and should excavate earth and gravel for such canal and protect its sides at his
own expense, the plaintiff must show that an obligation on the part of the de-
fendant to construct the canal was created by a request of the plaintiff in ac-
cordance with the terms of the contract made within a reasonable time, and, if
it appears that the first request by the plaintiff for the construction of the canal
was made thirty-eight years after the making of the covenant, and that in the
meantime the circumstances in regard to the property had changed, and if it
further appears that the plaintiff's bill was filed five and a half years after the
defendant's refusal to construct the canal and that there was great delay in the
prosecution of the bill, the plaintiff has been guilty of such unreasonable delay
in making his request for performance and in bringing his bill that he is entitled
to no relief.

BILL IN EQUITY, filed in the Supreme Judicial Court on July
13, 1893, and amended by leave of court on September 24, 1910,
to enforce specifically a certain agreement, described in the opin-
ion, made on October 15, 1849, by the defendant Cheshire Rail-
road Company with the plaintiff Baxter D. Whitney.

The defendants' answers were filed on September 19, 1893.
It was stated in the report to the full court, that "about 1902,
on the calling of the docket, the matter was again called to the
attention of the plaintiff's present counsel, and they, after corre-
spondence with the defendant's counsel and the plaintiff, moved
orally that the case be allowed to stand, the defendants' counsel
neither assenting nor objecting; thereupon the court directed
that the case should stand. In 1906, in the absence of both
counsel at the calling of the docket, the case was stricken from
the docket by order of the court. April 13, 1909, the case was
restored to the docket at the request of the plaintiff and with
the consent of the defendant." On January 19, 1910, William
M. Whitney filed a motion, alleging that he had acquired the
interests of Baxter D. Whitney in the premises referred to in
the indenture annexed to the bill and praying to be allowed to
appear in and prosecute the case as a party plaintiff. On Sep-
tember 24, 1910, the motion was granted by the allowance of

the amendment to the bill referred to above.    The other material facts are stated in the opinion.

The case came on to be heard before *Rugg*, J., who reserved it for determination by the full court upon the bill as amended, the answers, the deposition of Baxter D. Whitney and the facts found and reported by the justice, such decree to be entered as equity might require.

*T. H. Gage*, (*F. F. Dresser* with him,) for the plaintiff.

*C. M. Thayer*, (*A. H. Bullock* with him,) for the defendants.

SHELDON, J.    The bill is brought to secure specific performance of a covenant of the first named defendant contained in an indenture executed in October, 1849, between the plaintiff and that defendant.    By that indenture the plaintiff, in consideration of "the agreement" thereafter contained on the part of the railroad company and of $1 acknowledged to have been paid to him, conveyed to the company a strip of land therein described, to be used by the company for the construction and maintenance of its railroad thereon.    He therein reserved to himself in fee certain water rights, privileges and easements, some of which are stated in *Whitney* v. *Fitchburg Railroad*, 178 Mass. 559, and which included "also the right of carrying water from" the grantor's mill pond "through a canal, if one shall be constructed as is hereafter agreed on the part of" the railroad company, "and finished and completed as is hereafter agreed on the part" of the grantor, "without hindrance or obstruction by said company."    The "agreement" of the company, which was in large part at least the consideration for the conveyance, contains, first, a covenant with the grantor, his heirs and assigns, "that he and they shall have a right to use and enjoy the rights and privileges hereinbefore reserved to him and them;" secondly, certain stipulations to provide for the contingency of the railroad and embankment being carried off or destroyed; and thirdly, the covenant now sought to be specifically enforced, which is as follows:

"And the party of the second part [the railroad company] further agree that upon being requested by the party of the first part [the grantor] at any suitable and proper season of the year and being paid by him or his heirs or assigns the sum of thirty · dollars they will within six months thereafter construct a canal

through or across the railroad near the southeasterly end of said dam, of the width of twenty feet and to the depth of seven feet below " a fixed point, " and to construct suitable and sufficient stone abutments therefor, provided the party of the first part shall draw down the water in said pond so as to admit of said work being done conveniently and shall excavate and remove the earth and gravel for said canal at his own expense, he to use so much thereof as may not be needed to back up and complete the abutments of said canal in such manner as he may see fit, the party of the first part being also to put in at each side of said canal proper spilings to protect the embankment or dam, at his own expense and repair the same when necessary."

In 1852, the same parties made another agreement, providing for a change in the location and construction of the embankment and dam, by which the location of the dam was moved about eighty-five feet, but which is not material to this case.

This canal or culvert when constructed was to be for the benefit of Whitney's other land, and the water rights and easements were to be appurtenant to such land. It was intended to give to such other land a privilege or easement over the land of the railroad company, upon which its railroad was to be laid. But it was not a right or easement which was created and brought into actual existence by the covenant itself. The stipulation was not that Whitney was now to have this right for the benefit of his other land. It was simply that upon his future demand and compliance with certain conditions the railroad company should construct the canal, and that then, but only then, the right to the easement should become vested in himself and his heirs. It is for this reason that the reservation in the grant does not purport to be a reservation of a right, privilege or easement springing at once into life and to be exercised whenever he should choose to exercise it, like the other reservations made by him, but it is made conditional upon a canal being afterwards constructed by the railroad company. It might never be constructed ; and in that case the contemplated privilege or easement never would come into existence, and the contingent reservation would remain a mere nullity. Whether the easement ever would come into existence would depend upon an act to be done by himself, his request to the railroad company and his payment of the sum

of $30.  In this respect the case resembles *Williams* v. *Hart*, 116 Mass. 513.  In that case land had been conveyed in 1853 to a railroad company for the construction of a railroad thereon, subject to  the condition that the company should furnish to the grantor two crossings over the land conveyed and the railroad to be built thereon, one at grade and the other by a bridge, at spots to be afterwards designated by the grantor.  It was alleged in the bill as amended and of course was admitted by the demurrer that these crossings were intended to provide passages across the railroad for the benefit and improvement of the grantor's remaining land on either side of the land conveyed.  The railroad was built in 1855.  The grantor owned the adjoining lands until his death in 1864, and the plaintiff was his heir and had since been in possession thereof.  The grantor never had designated the spots where the crossings were to be constructed; but after his decease the plaintiff designated the spot for a bridge and requested that it be constructed.  At what time this was done did not more definitely appear; but the bill was brought in 1873.  In that case, as in this, as appears by the copies of the original papers on file, the crossings and the bridge when constructed were to be forever maintained by the railroad company for the benefit of the grantor, his heirs and assigns; and the main difference between that case and the one now before us is that there was not in that case, as there is here, an express covenant by the railroad company to do the act stipulated for, but merely the simple promise implied by law from its acceptance of the deed. *Kennedy* v. *Owen*, 136 Mass. 199.  In view of the rule that equity will compel purchasers with notice to observe stipulations affecting the use of land inserted in a deed, either by way of condition, covenant or otherwise, for the benefit of adjoining land of the grantor, this distinction may not be material.  At any rate it was not adverted to in the opinion of the court; but the bill seeking to compel the defendant to construct a bridge as contracted for, was dismissed upon the sole ground that the designation of the spot for the bridge was not made within a reasonable time.  The court said: " Where there is a condition to do a thing upon the performance of an act by the grantor, which is secret and lies within his own breast, the performance is excused till the grantor gives notice of the act."  And the delay for nine

years to give that notice was held to be unreasonable. A like rule must be applied here.

In this case, the agreement of the railroad company was made on October 15, 1849; Whitney's request, with the accompanying offer of performance on his part, was made on December 28, 1887, — a delay of more than thirty-eight years. The agreement fixed no time within which the request was to be made; it was simply to be made "at any suitable and proper season of the year." No sufficient cause for delay is shown; none can be found in the evidence reported. The rule has been laid down that where a demand is necessary to fix the legal rights of a party and give a complete cause of action, the demand ordinarily must be made within the time limited for bringing an action at law. *Codman* v. *Rogers*, 10 Pick. 112, 120. *Phillips* v. *Rogers*, 12 Met. 405, 412. *Western Union Telegraph Co.* v. *Caldwell*, 141 Mass. 489, 494. *Campbell* v. *Whoriskey*, 170 Mass. 63, 65. *High* v. *Commissioners of Shelby County*, 92 Ind. 580, 588, citing *Codman* v. *Rogers*, *ubi supra*, and many other cases to the same effect.

It is contended for the plaintiff that this doctrine is not to be applied where, as here, something more than a bare request or demand is necessary; and it has been intimated by this court that that might be so in an action at law. *Shaw* v. *Silloway*, 145 Mass. 503, 507, 508. *Downer* v. *Squire*, 186 Mass. 189, 201. *Cromwell* v. *Norton*, 193 Mass. 291. But the case of *Williams* v. *Hart*, 116 Mass. 513, already referred to, is decisive against that contention here. There, also, besides making his request, the plaintiff had a further act to do, by fixing and pointing out the exact spot at which he desired the bridge to be constructed. The language of the court in that case is equally applicable here: "The particular act which the grantor here undertook to do, and which it was necessary he should do, to render the obligation to build the bridge complete on the part of the grantee, depended solely upon himself; he could select his own mode and time for carrying out his agreement; no time being limited, the law implies an agreement to do it within a reasonable time under the circumstances." *Atwood* v. *Cobb*, 16 Pick. 227, 231. *Gardner* v. *Corey*, 11 Gray, 30. *Ford* v. *Cotesworth*, L. R. 4 Q. B. 127, 133. It would have been difficult for any one to

select in advance words more appropriate to the circumstances of this case.

It has been contended that the defendant's agreement to build a canal upon its own land for the benefit of Whitney's adjoining land and in aid of the easements reserved for that land was a covenant running with the land. *Morse* v. *Aldrich*, 19 Pick. 449. *Richardson* v. *Tobey*, 121 Mass. 457. *Norcross* v. *James*, 140 Mass. 188, 191. *King* v. *Wight*, 155 Mass. 444. *Whittenton Manuf. Co.* v. *Staples*, 164 Mass. 319. *Peters* v. *Stone*, 193 Mass. 179. Accordingly it is argued that the obligation of the covenant is not impaired by the mere omission of performance for more than twenty years without its having been released or extinguished. *Bronson* v. *Coffin*, 108 Mass. 175, 188. But that was the case of an actually existing and vested right in the nature of an easement, created by grant, of which mere non-user, without more, does not conclusively show an abandonment. *Barnes* v. *Lloyd*, 112 Mass. 224. *Butterfield* v. *Reed*, 160 Mass. 361, 369. *Clinton Gas Light Co.* v. *Fuller*, 170 Mass. 82, 90. *Gloucester Water Supply Co.* v. *Gloucester*, 179 Mass. 365, 379. *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145, 153. As has been already pointed out, we have here merely an executory agreement for the creation in the future, upon the doing of an act by Whitney, of a right and interest which will only then come into being. This contention cannot avail the plaintiff. It was actually existing rights and easements that were protected and enforced in *Whitney* v. *Fitchburg Railroad*, 178 Mass. 559.

Nor can it be said that the plaintiff's delay is not accompanied by such a change of circumstances as to affect injuriously the rights of the railroad company if specific performance were now enforced. Whitney himself in 1874 brought about a material change by his deed to the Ware River Railroad Company. He conveyed to that company the right to maintain and operate a railroad over a part of his land; and it has built and operated a railroad thereon in such a location that the canal called for now must go under the tracks of both railroads. This would involve not only some additional expense, but increased difficulty of construction and risk of maintenance. But for this voluntary act of Whitney it may be that the new railroad would have

been laid out upon a different location, would have crossed the Cheshire railroad at a different point, and would have created no practical obstacles to the construction desired.

In another aspect also the situation of the parties has been changed since 1849.  Traffic has largely increased since that time.  Much heavier engines and rolling stock are now used.  Accordingly the type of construction for both road and road-bed has been made heavier and more solid.  Increased strength must be provided for in carrying a canal or culvert across or under the tracks.  Nor can we forget that the railroad company is under a very onerous obligation to see to it that its tracks and structures are safe for the travelling public as well as for the transportation of goods.  For this reason it is entitled and required to keep in its own hands and under its own control both its tracks and the ground, bridges, cuttings, embankments and other structures upon which its tracks rest.  *McElroy* v. *Nashua & Lowell Railroad,* 4 Cush. 400.  *Brainard* v. *Clapp,* 10 Cush. 6.  *Curtis* v. *Eastern Railroad,* 14 Allen, 55, 58.  *May* v. *New England Railroad,* 171 Mass. 367, 369.  *Jackson* v. *Rutland & Burlington Railroad,* 25 Vt. 150.  *Connecticut & Passumpsic Rivers Railroad* v. *Holton,* 32 Vt. 43.  *Hayden* v. *Skillings,* 78 Maine, 413.  *Cairo, Vincennes & Chicago Railway* v. *Brevoort,* 62 Fed. Rep. 129, 135.  And see the strong language of Braley J., in *Boston & Maine Railroad* v. *Hunt, ante,* 128, decided since this case was argued.  Culverts and canals across the tracks are doubtless sometimes necessary; but their presence must involve some increase of risk, and even independently of the evidence in this case it is matter of common knowledge that their existence ought not to be allowed where it can be avoided.  The public interest here cannot be overlooked.  But where that is involved, the doctrine of laches will be applied more strictly than otherwise would be done.  *Kenny* v. *Pittsburg, Virginia & Charleston Railway,* 208 Penn. St. 30.  *Clark* v. *Cambridge & Arapahoe Irrigation & Improvement Co.* 45 Neb. 798.

In other respects the conduct of the plaintiff has been lacking in diligence.  After having delayed for more than thirty-eight years to call for performance by the railroad company, he waited five and a half years more before filing his bill (see *Boston & Maine Railroad* v. *Bartlett,* 10 Gray, 384, and *Haughwout* v. *Murphy,*

6 C. E. Green, 118), and then paid so little attention to his pending suit that thirteen years afterwards (in 1906) it was stricken from the docket and only restored three years later (in 1909) upon the application of the plaintiff without objection from the defendants; and the date of the reservation indicates that it was not brought to a hearing until 1911.   This is far from showing such reasonable diligence as should have been displayed.   It may be, and we are willing to assume, that, since the defendants themselves might have brought the case to a hearing, this is not such laches as to bar the plaintiff from relief.   *Drury* v. *Midland Railroad,* 127 Mass. 571, 585.   But it does not recommend him to the favorable consideration of the court.   It does not atone for his previous delays.   See *Bancroft* v. *Sawin,* 143 Mass. 144; *Bowers* v. *Cutler,* 165 Mass. 441; *Johnston* v. *Standard Mining Co.* 148 U. S. 360; *Lange* v. *Belloff,* 8 Dick. 298; *Sebring* v. *Sebring,* 16 Stew. 59.

The plaintiff has been guilty of such unreasonable delay in making his request for performance and bringing his bill that no relief ought now to be given to him in equity.

*Bill dismissed with costs.*