MARY QUIGLEY, Defendant in Error, *vs.* W. N. MACQUEEN & Co., Plaintiff in Error.

*Opinion filed April 23, 1926.*

1. CORPORATIONS—*when president's agreement is presumed to have been authorized.* The president of a corporation is by virtue of his office recognized as the business head of the company, and any contract executed by the president on behalf of the corporation, pertaining to corporate affairs within the general powers of the corporation, will, in the absence of proof to the contrary, be presumed to have been done by authority of the corporation and will be binding upon the company.

2. SAME—*right of corporation to sell its own stock is subject only to the rights of creditors.* The right of a corporation to sell its own stock is not restricted or limited so long as the rights of creditors are not affected thereby.

3. CONTRACTS—*when statute does not begin to run until notice and demand.* Where a party makes an exchange of mortgages for bonds of a corporation with the understanding that the company will buy back the bonds at any time on thirty days' notice, suit upon the company's agreement to re-purchase the bonds may be instituted at any time within five years after notice and demand for a return of the purchase price, as the statute does not begin to run until the giving of the notice, which was within a short time after the purchaser discovered she had been given common stock of the company instead of bonds.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding.

J. S. DUDLEY, for plaintiff in error.

HUTSON & TRAEGER, (HELMER BRANDELL, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

The defendant in error brought suit against the plaintiff in error company on an alleged contract for re-purchase of ten shares of common stock in that company. The suit

was filed in the municipal court of Chicago as a first-class action, and in the statement of claim it was alleged that the plaintiff had made demand for the return of the money paid for the stock less one per cent, as the alleged contract provided. The plaintiff in error defended on the ground that it did not make any such contract with the defendant in error and received no consideration from her, and that the supposed cause of action set out in the statement of claim did not accrue within five years preceding the commencement of suit and was therefore barred by the Statute of Limitations. The cause was heard before the court, which made certain findings of fact and law and gave judgment for the defendant in error on her statement of claim in the sum of $1010.47. The judgment was affirmed by the Appellate Court on appeal and comes here by *certiorari*.

The facts as found by the trial and Appellate Courts are as follows: That the defendant in error, Mary Quigley, was the owner of two mortgages, of $500 each, which she had purchased from the plaintiff in error company, and on June 10, 1917, she made a contract with Winfield Macqueen, president of the company, to exchange her mortgages for what she testified were to be bonds, but which, in fact, proved to be common stock of the company; that at the time of the exchange Macqueen, in response to her statement that she did not want to put her money where she could not get it at any time she wanted it, told her that the company stood back of the bonds, and that all she had to do was to give the company thirty days' notice and she would get her money back, less one per cent. During the early part of 1919 the defendant in error found out that she had common stock and not bonds, and in the spring of that year she told Macqueen that she was giving thirty days' notice to the company to refund her money and take up the stock, and he asked sixty days' notice. She telephoned to him a number of times thereafter, but he told her that if she would have a little patience she would get her money

but that the war had put the company back somewhat in its business. Suit was brought on the alleged contract on October 26, 1922. A formal written demand was made on the company on October 1, 1922. The trial judge found that the cause of action did not accrue to the defendant in error until the year 1919 and that the Statute of Limitations had not run.

Two principal questions are presented: First, is there any evidence to sustain the finding of the trial and Appellate Courts that Macqueen was authorized to act for the plaintiff in error company? Second, had the Statute of Limitations run against the right of the defendant in error to sue before suit was started?

The plaintiff in error sought to prove that the stock which was traded to defendant in error belonged to Macqueen and not to the company. This proof was refused by the court and such refusal is urged as error. The issue was whether or not Macqueen made the contract for the company, as claimed by the defendant in error, and if he did, whether or not he had authority so to do. The question as to who owned the stock was therefore of no importance. The general rule is that the president of a corporation, as agent and representative, has power, in the ordinary course of business, to execute contracts and bind the company in so doing. He is by virtue of his office recognized as the business head of the company, and any contract pertaining to corporate affairs within the general powers of such corporation, executed by the president on behalf of the corporation, will, in the absence of proof to the contrary, be presumed to have been done by authority of the corporation. (*Lloyd & Co.* v. *Matthews,* 223 Ill. 477.) There is no objection in the law to a corporation selling its own stock, and such right of sale is not restricted or limited so long as the rights of creditors are not affected thereby. (*Republic Life Ins. Co.* v. *Swigert,* 135 Ill. 150; *Clapp* v. *Peterson,* 104 id. 26.) The sale of stock of the

plaintiff in error company being within the general powers of the company, and Macqueen being its president, the presumption of his authority to act in behalf of the company in the sale of its stock arises. There is nothing in the evidence to rebut that presumption. The record discloses no limitation on his powers in that capacity. The court evidently did not believe his testimony that he was not acting for the company. The defendant in error's testimony that he stated that the company would take up the stock when requested so to do is corroborated by a witness who testified that she heard the conversation. The plaintiff in error's contention that Macqueen was without authority to bind the company cannot be sustained.

We come next to the contention that the Statute of Limitations has run. The contract of exchange was entered into on June 10, 1917, while the suit was not brought until October, 1922. According to the terms of the contract as found by the trial and Appellate Courts, and which question is not open here, Macqueen, as president of the plaintiff in error, told the defendant in error that she might have her money back at any time upon thirty days' notice. It is evident from the terms of the contract that a cause of action would not accrue until a demand is made. The rule is, that where no time is fixed for performance, demand must be made within a reasonable time. What is a reasonable time depends upon the circumstances of each case. Some authorities fix such reasonable period for making a demand as within the period of the Statute of Limitations, but such rule has been definitely rejected by this court on the ground that to adopt that period of time as an arbitrary rule would be merely to double the Statute of Limitations, which would be unwarranted. (*Emerson* v. *North American Transportation Co.* 303 Ill. 282.) The evidence in this case shows that the defendant in error did not learn that she had common stock instead of bonds until early in the year 1919, and that in the spring of 1919 she notified Mac-

queen that she expected the return of the purchase price of the stock, less one per cent. Under such circumstances we are of the opinion that the notice was given within a reasonable time. The Statute of Limitations began to run from the time of the giving of such notice, in the spring of 1919. The suit was filed in October, 1922, which was within five years after demand, and the second contention of the plaintiff in error, therefore, cannot avail.

The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*