JOAN J. SOUTHWARD, Appellant, *v.* JOHN BERNARD FOY, Executor of the Last Will of George Morland Southward, Deceased, Respondent.

No. 3539

December 21, 1948.                    201 P.2d 302.

*H. R. Cooke,* of Reno, for Appellant.

*Thomas F. Ryan,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

On June 3, 1926 Joan J. Warren loaned to George M. Southward, among other securities, a $1,000 United States Steel Corporation 5% bond "to be used as security for a loan." Over twenty years later, on January 3, 1947, she filed suit against Southward's executor for the value of the bond. In the meantime a number of incidents intervened. About a month after the loan Joan Warren and George M. Southward intermarried. The United States Steel Corporation called the bond for redemption on November 1, 1929 and the bond was surrendered for redemption (by whom it does not appear)

at some time between November 1, 1929 and February 5, 1931, and was redeemed by the payment to an undisclosed person of the sum of $1,100. On May 8, 1935, some nine years after the marriage of Joan Warren and George Southward, she sued him for divorce on the ground of his willful desertion of her, and on the following day Southward filed in said divorce action a "waiver and appearance" stipulating that the court might render such judgment as might be just and equitable in the premises, and on May 14, 1935 an absolute decree of divorce was filed dissolving the bonds of matrimony between the parties whereunder each of them was "forever released from the obligations" thereof. On May 24, 1946 Southward died, and in July, John Bernard Foy, respondent herein, was appointed executor of his will. In due course appellant filed her claim for the value of the bond against the executor, which claim was rejected, and the filing of the complaint followed.

The evidence adduced was brief. Upon identification of Southward's signature plaintiff was permitted to introduce, over defendant's objection, the original receipt for the bond, which read as follows:

"Reno, Nevada, June 3—1926

Received from Joan J. Warren the following bonds

> One U. S. Steel Corporation No. 113792—5%—1000.00
> One Chicago Ry Co. bond No. 643 —5%—1000.00
> One Chicago Ry Co. bond No. 644 —5%—1000.00
> One Wabash Railroad Co. bond No. 11970—5%—1000.00

Above bonds are property of Joan J. Warren and are loaned to me to be used as security for a loan. Geo M. Southward"

Plaintiff's complaint admitted that Southward had, prior to his death, returned the two Chicago Ry. company bonds, and plaintiff voluntarily dismissed as to the Wabash Railroad company's bond, which had become worthless, so that the action involved only the United States Steel Corporation bond. Plaintiff also introduced the deposition of an officer of the United States Steel Corporation showing the redemption of the bond as above recited, and rested. Counsel for plaintiff at this

time remarked to the court: "I might say in this connection that the plaintiff at this time is a very sick woman, and I couldn't have her here, even if she could testify; and in view of the Dead Man Rule, I don't think there is anything she could say that could be admitted, so I didn't arrange to have her here. I make that explanation as to her absence." Other facts above recited were admitted by the pleadings.

The trial court ordered the matter submitted on briefs and thereafter filed a written opinion and decision rejecting plaintiff's claim that the transaction was a bailment that created a continuing trust (whereunder it was asserted that a repudiation thereof, brought to the knowledge of the trustor, was essential to the commencement of the running of the statute of limitations) and held that the failure of Southward either to return the bond or the redemption proceeds thereof to his bailor "constituted a conversion and was in violation of the express purpose of the bailment. Therefore, the' bailment ceased between 1929 and 1932, and a cause of action in favor of the plaintiff accrued," and that the action was barred by limitations. The trial court further held that even if it could be assumed that the purposes of the bailment could have continued until the divorce action, it then became the duty of the plaintiff to make a demand within a reasonable time and that such reasonable time was before the termination of the divorce action; that she was "guilty of unreasonable delay" and should have made her demand at the time of the commencement of the divorce action.

■ The respective positions of the parties with reference to the law involved appear to be the same in this court as described by the learned district judge. Both sides have argued and briefed their positions at great length and with much care and skill. Respondent insists that appellant did not make out a cause of action under any theory of her case; that even assuming proof of delivery of the bond from the receipt admitted in

evidence, there was no proof that the bond had not been returned; that the proof that the bond had been called, redeemed and cremated by United States Steel between November 1929 and February 1931 was entirely lacking as to the identity of the person who had surrendered it and received the money; that such person might as well have been the plaintiff as the defendant's testator. After careful consideration, however, we are satisfied that plaintiff's production of the receipt constituted sufficient prima facie evidence of her ownership of the bond and of the failure of defendant's testator to return the same or pay the value thereof. Potoker v. Klein, 105 N.J.L. 183, 143 A. 375; 48 C.J. 687, Payment, sec. 189. The rebuttable presumption of nonpayment arising from the obligee's possession of the written obligation has been applied to bills and notes, bonds, mortgages, and receipts for money deposited. See cases cited in footnote id.[1]

■ ■ Appellant relies squarely upon the proposition that the situation indicates a continuing trust, and until the repudiation thereof by the trustee and knowledge of such repudiation brought to the trustor the statute of limitations does not commence to run against the latter; that the rule thus asserted is equally applicable if we call the situation a bailment and that it is equally true if the gist of the action is, as determined by the learned trial judge, the conversion of the bond by the defendant's testator, as the latter had come legally into possession. Appellant further insists that the situation is precisely the same if the plaintiff's cause of action is based upon the written contract of the parties. In any of such cases, it is asserted by appellant, a demand and refusal became essential to the accrual of plaintiff's

[1]Authorities considered by the court, discussing exceptions to the general rule that payment is an affirmative defense to be pleaded and proved by the defendant included Potoker v. Klein, cited above; Brenton Bros. & Leach v. Hill, 197 Iowa 125, 196 N.W. 947; Cochran v. Reich, 91 Hun. 440, 36 N.Y.S. 233; and Sullivan v. Hobbs, 19 Ala.App. 465, 98 So. 307. Even if applicable, they give way to the presumption discussed in the text.

cause of action so that the statute of limitations would not commence to run until such demand and refusal.[2] Many authorities are cited by appellant in support of the foregoing contentions, and we are disposed to agree that they are good law. They are, however, not conclusive upon the point submitted for our determination. The trial court was "of the opinion, in view of all the evidence in this case, that the plaintiff certainly failed to make a demand within a reasonable length of time * * * [and] that a reasonable, diligent and prudent person, in the position of the plaintiff, should have made a demand for the return of the bond or the proceeds from redemption at the time of the divorce action." We are in accord with the view that plaintiff could not, by her own action in withholding a demand, create a situation whereunder she would never be barred by limitations.[3] Respondent relies upon the rule laid down in Wright v. Paine, 62 Ala. 340, 34 Am.Rep. 24; Codman v. Rogers, 10 Pick. 112, 27 Mass. 112, and similar cases. In the former case the court said:

"When a demand is essential, as a condition precedent to an action, it must be made in a reasonable time. The party bound to make it, can not postpone it indefinitely, and by his procrastination keep alive claims that would otherwise become dormant, and grow stale, the enforcement of which would be offensive to the policy of the law and dangerous to the rights of his adversary."

The court then explains the results that would ensue were a plaintiff permitted to delay his demand indefinitely:

"It would be a dangerous precedent; it would endanger the estates of the dead; it would render the rights of the

[2]Appellant's brief contends, in its discussion of the issues (1) that the transaction was a continuing trust, (2) that it was a bailment, (3) that it rose out of Southward's breach of the written contract.
[3]Stat. of Lim., N.C.L. sec. 8524, six years on cause of action founded on instrument in writing; four years on liability on obligation not founded on written instrument; three years for detention of personal property; N.C.L. sec. 8527, in actions not otherwise provided for, four years after the cause of action shall have accrued.

living uncertain and insecure; it would open the door for the introduction of stale claims, which it has been well said, have often more of cruelty than justice in them; and it would be violative of the policy of the statute of limitations, and defeat the purposes it was intended to accomplish, if without an explanation of the long delay in making demand, and the unwarrantable delay in bringing suit, after the fruitless demand, until Winston was dead, the statute was held not a bar."

Virtually the same thing was said in Codman v. Rogers, supra, where the plaintiff waited seventeen years before demanding an accounting. His equitable remedy was held to be barred by his laches.

Appellant cites the case of Reizenstein v. Marquardt, 75 Iowa 294, 39 N.W. 506, 1 L.R.A. 318, 9 Am.St.Rep. 477, as holding that such rule applies only in cases of contract and not in cases of tort. We do not read the case as holding precisely this, and think that the case was properly decided under its facts. The principle of requiring a demand to be made in a reasonable time and under the facts and circumstances of each case, as hereinafter more fully discussed, and without restriction to cases in contract, is recognized in the cases cited in the annotation to this case appearing at page 319 of 1 L.R.A.

In Shaw v. Silloway, 145 Mass. 503, 14 N.E. 783, 786, the court says that the question as to whether a court of law can properly lay down a general rule that where a demand is necessary, as preliminary to the bringing of an action, such demand must be made within a reasonable time, had been decided in the negative in a number of jurisdictions but had never been determined in Massachusetts. Referring to Codman v. Rogers, cited in the last preceding Iowa case, the court said that it "was a case in equity, and the doctrine declared was merely the ordinary doctrine of laches in equity." In the Shaw case the defendant borrowed money from the plaintiff, executed his note therefor, and executed an additional instrument reciting the receipt of the proceeds of the

note and consigning to the plaintiff certain personal property as security for the payment of the note and of certain other contracts. The property was not delivered, but the instrument contained a promise to deliver it to the plaintiff on demand. The court said: "It is not a just or reasonable construction of such agreement to hold that a demand may be made upon it at any time, however remote, and although the debt to be secured has become barred by the statute of limitations. Otherwise, the claim might continue open forever. It is not to be supposed that such was the intention of the parties. It is true that no cause of action accrues until a demand, and that therefore the statute of limitations does not begin to run till such demand. But our decision rests on the ground that the contract, by implication, requires a demand within the time of the continuance of legal liability upon the debt, and that a demand after the expiration of that time is too late." It will be noted that the reason for the decision did not rest upon the determination of the general question. Under its reasoning, however, it might well have done so. Shaw v. Silloway has become a leading case on the subject and has been cited on numerous occasions.

Whitehurst v. Duffy, 181 Va. 637, 26 S.E.2d 101, 103, cites Shaw v. Silloway, supra, with approval but considers generally the proposition that where some condition precedent to the right of action exists, whether it is a demand and refusal or some other act or contingency, the cause of action does not accrue nor does the statute of limitations begin to run until that condition is performed, citing 34 Am.Jur. 95, Limitations of Actions, sec. 116. The court says, however:

"This principle is, however, subject to the well-recognized exception that 'if the only act necessary to perfect the plaintiff's cause of action is one to be performed by the plaintiff, and he is under no restraint or disability in the performance of such act, he cannot indefinitely suspend the statute of limitations by delaying performance of that act. It is not the policy of the

law to permit a party against whom the statute runs to defeat its operation by neglecting to do an act which devolves upon him in order to perfect his remedy against another.' 34 Am.Jur., Limitations of Actions, sec. 116, p. 96. See, also, 6 Williston on Contracts, Rev.Ed., sec. 2041, pp. 5718, 5719; 37 C.J., Limitations of Actions, sec. 324, pp. 953, 954."

Later the court discusses in some detail the two conflicting rules of law prevailing in the United States as to when the cause of action accrues for the purpose of setting the statute of limitations in motion. One view is that this period commences "as soon as the creditor, by his own act and in spite of the debtor, can make the demand payable." The leading case in support of this theory is cited as Palmer v. Palmer, 36 Mich. 487, 24 Am.Rep. 605, and is said to prevail likewise in Maine and Pennsylvania, from which jurisdictions several cases are cited. The court says, however, that this view is not in accord with the weight of authority, and refers to the annotation in 136 Am.St.Rep. 469, which characterizes the Michigan-Maine-Pennsylvania rule as "the extreme doctrine," which characterization corresponds with a similar statement in 6 Williston on Contracts, Rev. Ed., sec. 2041, p. 5718—Mr. Williston stating that the correct rule is laid down in Campbell v. Whoriskey, 170 Mass. 63, 48 N.E. 1070, 1072. That case discusses with approval Codman v. Rogers discussed in connection with Shaw v. Silloway, supra, and notes that in the last-mentioned case the decision was put upon the construction of the contract "in reference to the time when a demand under it was to be made." The Massachusetts court goes on to say:

"We are of opinion that the true principle is that the time when the demand must be made depends upon the construction to be put upon the contract in each case. If the contract requires a demand without language referring to the time when the demand is to be made, it is as if the words 'within a reasonable time' were found in it. What is a reasonable time is a question of

law, to be determined with reference to the nature of the contract and the probable intention of the parties as indicated by it. Where there is nothing to indicate an expectation that a demand is to be made quickly, or that there is to be delay in making it, we are of opinion that the time limited for bringing such an action after the cause of action accrues should ordinarily be treated as the time within which a demand must be made. See Jameson v. Jameson, 72 Mo. 640, and cases above cited. Such a rule seems fairly to apply the principles and analogies of the statute of limitations to the contract of the parties, and it is in accordance with the weight of authority in this commonwealth and elsewhere."

In Whitney v. Cheshire R. Co., 210 Mass. 263, 96 N.E. 676, 679, in which a grantor of a right of way to the railroad was given the right to demand the construction of a canal for his benefit across the right of way and in which the request for performance was delayed for thirty-eight years, although he was not limited in time by his contract, the court cited with approval Codman v. Rogers, supra, Campbell v. Whoriskey, supra, Shaw v. Silloway, supra, and concludes: "The plaintiff has been guilty of such unreasonable delay in making his request for performance and bringing his bill that no relief ought now to be given to him in equity." It is to be noted that the bill in that case was for specific performance of the railroad company's covenant. But while it was thus cognizable in equity by reason of the nature of the remedy sought, it grew out of contract and the contract itself contained no time limitation against the exercise of the right.

Wehrle v. Mercantile National Bank, 221 Mass. 585, 109 N.E. 367, was an action to recover twenty-six shares of stock of the defendant bank which had been deposited as security for an indebtedness, which indebtedness had long since been settled. The indebtedness was paid in 1885. The pledgor's assignee died in 1890 and no other assignee of the pledgor's estate was appointed until 1912. In that year plaintiff was appointed as such

assignee and filed suit for the recovery of the stock in 1913, some twenty-eight years after the payment of the debt for which the stock had been deposited as collateral. The plaintiff recognized the rule that where a demand is necessary to fix the legal rights of a party and give a complete cause of action, the demand ordinarily must be made within the time limited for bringing an action at law (Whitney v. Cheshire R.Co., 210 Mass. 263, 96 N.E. 676), but contended that such rule is confined in its operation to cases where an executory contract calls for the performance of some act upon demand. The court said, however [221 Mass. 585, 109 N.E. 368]: "* * * the rule is general in its scope and applies commonly where no fiduciary relation exists. * * * The lapse of 28 years without any excuse other than appears upon the face of this bill is fatal to the maintenance of this suit. There is nothing to indicate fault on the part of the defendants in this respect or any conduct by deception or otherwise to prevent seasonable action by the plaintiff. It is not the province even of equity to afford relief against the natural consequences of such protracted slumber upon the rights of the character here alleged. (Citing cases.)"

In Cobb v. Wallace, 5 Cold, Tenn., 539, 98 Am.Dec. 435, a case decided in 1868 but cited in many of the cases referred to, supra, and in which the written contract in question consisted simply of a receipt for a barge loaded with coal with an agreement to pay $3 per day therefor until returned, the court said:

"In cases of bailment, where the contract is indefinite as to the time of its continuance, the bailee has not the arbitrary and exclusive right to determine at what time it shall terminate. If the bailment is for an explicitly declared purpose, it terminates whenever that purpose is accomplished. If the time be not fixed by agreement, or by the nature of the object to be accomplished, then the bailee must return the property whenever called upon, after a reasonable time; and what time is reasonable must be determined by the circumstances of each particular case: 2 Parsons on Contracts, 128, 129."

██ Appellant cites Levy v. Ryland, 32 Nev. 460, 109 P. 905, as holding that the statute of limitations does not run against a resulting trust in favor of the trustee because the trustee's possession is deemed in law the possession of the cestui que trust, and also in support of the rule that the statute does not run against a trust till it has been openly disavowed by the trustees, insisting on an adverse right and interest, clearly and unequivocally made known to the cestui que trust. These general rules are not disputed although in the case itself NORCROSS, C. J., dissented on the ground that the trustee had, as a matter of fact, openly repudiated the trust by delivering to the trustor a deed for a half interest in only a part of the land in which he had agreed to convey a half interest. In the opinion of Judge NORCROSS the trustor could not avail himself of the claim that he did not read the deed until after the statute had run.

Stephens v. Crawford, 209 App.Div. 142, 205 N.Y.S. 39, is relied upon by appellant. The case was one in which the plaintiff sued for breach of the contract of bailment instead of relying upon the conversion, and the court relied upon the rule stated in 25 Cyc. 1094 as follows:

"A bailor's right of action against his bailee accrues at the time of the latter's breach of duty under the contract of bailment, and the statute of limitations then begins to run. Unless the term of the bailment is limited, no lapse of time bars the bailor's right to the property, and his right of action does not accrue, and the statute does not begin to run, until denial of the bailment and conversion of the property by the bailee or some one claiming under him. To set the statute in motion there must be some act of the bailee inconsistent with the bailment, and changing the nature of his holding, such as a refusal to deliver on demand."

This, however, does not touch upon the rule above discussed to the effect that where the cause of action does not arise until a demand and refusal and it is within the plaintiff's power to make such demand, the statute will commence to run after the lapse of a reasonable

time to be determined by the nature of the contract and the circumstances surrounding it.

A case of much interest but to which time permits only a brief reference is Thompson v. Whitaker Iron Co., 41 W.Va. 574, 23 S.E. 795, 796, in which one hundred tons of iron were delivered in 1880 to the defendant who refused to accept it because it did not comply with the terms of plaintiff's contract. Defendant wrote plaintiff, however, that it might remain on defendant's premises without expense to plaintiff and would be well cared for. No further correspondence took place till 1892 when plaintiff inquired about the iron and later demanded delivery or that defendant account for its proceeds. The court held that the situation created a bailment; that no title had vested; that it was not an express trust nor a simple or passive trust, the trustee being a mere passive depository with possession only and no property except such as rests in a bailee under the law of bailment, "a mere depositum without reward." The court said: "In a sense, a bailment is a trust, but not such as is cognizable in equity, but is a subject of common-law jurisdiction." The court then discusses the situation from the point of view of bailment, of conversion, of trust and of fraud, and applies the rule of the necessity of demand and suit within a reasonable time. The oft-quoted statement of Justice Swayne is quoted by the court and will bear repeating:

"Statutes of limitation are vital to the welfare of society, and are favored in law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. Important policy lies at their foundation. They stimulate to activity, and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together."

It will be seen from the foregoing authorities[4] that the learned district judge, in holding that the cause of action growing out of the conversion was barred by the statute of limitations and further that there was an unreasonable delay on the part of the plaintiff in asserting her rights or in making a demand, particularly with reference to her divorce action, was properly guided by the rules enunciated, whether we consider the matter from the angle of the conversion or under appellant's theory of bailment or appellant's theory of trust or appellant's theory of contract. To make this more understandable, it is necessary to consider both the express and implied rights and obligations of the parties under the contract or receipt which is the sole evidence of plaintiff's rights.

Following the receipt for the bonds is the statement, as noted: "Above bonds are property of Joan J. Warren and are loaned to me to be used as security for a loan." First the title of appellant is acknowledged. On the other hand, the acceptance of the receipt is an acknowledgment of Southward's rightful possession for the purpose indicated. When "used" as security for a loan such "use" necessarily implied delivery as a pledge or collateral security. It implied that Southward would deliver the same as security for the payment of a promissory note or other written obligation. This in turn implied that Southward's loan from his lender would necessarily be for a term—whether thirty days, sixty days, six months, a year or longer. It implied that he would in due course repay such loan, redeem the bonds and return them to appellant. There is nothing to imply that he might use the bonds for a series of

---

[4]Respondent has cited a number of other cases holding that demand, when necessary to establish a cause of action, must be made within a reasonable time, and we are in accord with the reasoning and conclusions of these authorities. They include: Quigley v. W. N. Macqueen & Co., 321 Ill. 124, 151 N.E. 487; McCormick v. McCormick, 140 Kan. 38, 33 P.2d 942; Gossard v. Gassard, 10 Cir., 149 F.2d 111; Thomas v. Pacific Beach Co., 115 Cal. 136, 46 P. 899. See, also, White v. Sheldon, 4 Nev. 280.

successive loans.  The receipt certainly recognized the possibility that Southward might find it impossible to pay off the loan and redeem and return the bonds; that Southward's lender might be compelled, on failure of Southward to pay his note when due, to realize upon the security.  The receipt or contract in question may be said to permit the further implication that if such loss of the bonds through action of Southward's lender occurred, Southward would pay the value thereof to appellant.  Such implication is justified by the clear recital that the delivery was a loan, which negatives the thought of a gift or the conclusion that Southward's loss of the bonds through sale thereof by his lender would absolve him from further liability to appellant.  The further implication may be clearly drawn that Southward would not sell the bonds and appropriate to himself the proceeds of such sale.  His use was limited to the purpose of securing a loan.  Through all of the specified and implied rights and liabilities of Southward as above recited, runs the further implication that the contemplated acts occur within a reasonable time. Applying these expressed and implied provisions to the situation, we find the following:  Plaintiff lent the bonds to defendant's testator in 1926.  She married him a month later.  Sometime in the approximate calendar year of 1930 U. S. Steel Corporation redeemed the bond for $1,100, paid presumably to Southward or his assignee or pledgee.  Southward deserted plaintiff in 1933, up to which time they had apparently lived together as man and wife.  She divorced him in 1935, upon his voluntary submission to the jurisdiction of the court.  He died in 1946, in which year she filed her claim against his estate.  In view of this situation it is not strange that plaintiff felt impelled to make sundry allegations in her original and amended complaint— that under the agreement "said bonds were to be later returned to plaintiff on demand, or, that said deceased would pay plaintiff on demand the face value of any bonds not so returned;  *  *  *  that no demand for

return of said bonds or for payment has been made; * * * that no demand was made by plaintiff upon the deceased during his lifetime for the return of said bonds or for payment of the value thereof by reason of the fact that plaintiff was informed and believed said deceased was unable to make return thereof and was wholly without means to pay the value of same." And in her reply (defendant's answer having pleaded limitations, laches and estoppel) she alleged "that for some time prior to and on June 3, 1926 plaintiff and said George M. Southward were engaged to be married to each other; that the facts alleged * * * constituted said decedent a trustee * * * and that in his lifetime said decedent never repudiated said trust and no demand was ever made upon [him]"; also that he was absent from the state for periods aggregating more than eight years. As to which, if any, of these allegations were proved, we refer to our earlier statement of the complete case made by plaintiff.

■■ Both under the rule of law fixing a reasonable time for demand and suit and the rule of equity barring relief on account of her laches, we are satisfied that the judgment of the district court was correct. As to the defense of estoppel we do not find it necessary to comment, except in the relation such equitable defense bears to the defense of laches. In this regard, however, see Walker v. Walker, 41 Nev. 4, 164 P. 653, 169 P. 459.

The judgment and the order denying plaintiff's motion for a new trial are hereby affirmed with costs.

EATHER, C. J., and HORSEY, J., concur.